492 F.2d 232
 UNITED STATES of America ex rel. Melvin TOBE, Petitioner-Appellee,
v.
Peter B. BENSINGER, Director Department of Correction of
State of Illinois, and John J. Twomey, Warden,
Illinois State Penitentiary, Joliet,
Illinois, Respondents-Appellants.
 No. 73-1331.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 5, 1973.
Decided Feb. 12, 1974.
 
 Jayne A. Carr, Asst. Atty. Gen., Chicago, Ill., for respondents-appellants.
 James R. Bronner, Chicago, Ill., for petitioner-appellee.
 Before SWYGERT, Chief Judge, SPRECHER, Circuit Judge, and POOS,* District Judge.
 SPRECHER, Circuit Judge.
 
 
 1
 This appeal raises the question of whether the district court properly granted a writ of habeas corpus to a state prisoner based on a finding that unauthorized jury communications to the effect that the jury had to keep deliberating and reach a verdict involved such a probability of prejudice that they must be deemed to have resulted in an inherent lack of due process.
 
 
 2
 * The defendant, Melvin Tobe, was found guilty in an Illinois state court of voluntary manslaughter on February 27, 1970 by a petit jury. At that time, the jury was polled and each juror stated that the verdict 'was and is' his or her verdict.
 
 
 3
 At the prosecutor's request, the attorneys were permitted to speak to the jurors about the case. As a result of such conversations, defense counsel's post trial motions included a motion for a hearing on inquiries made by the jury in the course of their deliberations (hearing on inquiries) 'in order to determine the number and substance of inquiries made by the jury to the Court in the course of their deliberations . . .' Attached to the motion was defense counsel's affidavit stating that in telephone conversations with the forelady and two other jurors he had learned that 'three inquiries made of the Court by the jury never reached the Court.' The inquiries all concerned the possibility of reaching a nonunanimous verdict. The responses were to the effect that the jury must keep deliberating and reach a unanimous verdict.[1]
 
 
 4
 In ruling on the motion for a hearing on inquiries, the trial judge questioned the bailiff, Thomas Goe, under oath who testified that he knew of only one inquiry made by the jury and that inquiry was answered by the court. The trial judge added that his notes showed only one inquiry was directed to him.[2] The court denied the motion for a hearing on inquiries on the basis that assuming arguendo that the communications between the bailiff and the jury occurred, they were not prejudicial.[3]
 
 
 5
 On April 7, 1970, defense counsel filed a motion to reconsider the original motion for a hearing on inquiries. The motion was supported by the affidavits of seven jurors and two bailiffs. Subsequently, the affidavit of a deputy sheriff was filed. The affidavits of the jurors indicated that three or four inquiries concerning the alternatives to a unanimous verdict had been made[4] about 3 1/2 hours into deliberations when the jury stood nine for acquittal, two for guilty of voluntary manslaughter and one for guilty of murder. Some of the jurors indicated that these communications had influenced the verdict. The affidavit of Bailiff Domitila Rodriquez stated that the buzzer had been rung at least two or three times and Thomas Goe had responded on these occasions. The affidavit of the deputy sheriff Grover Weiss, stated that two or three times during the course of deliberations 'the jury made inquiries to the effect: 'What happens if we cannot reach a verdict?" and that the bailiff 'Toni' (Bailiff Rodriquez) had answered that 'they should keep deliberating until they reached a decision.'
 
 
 6
 At the April 15, 1970 hearing, defense counsel cross examined Bailiff Goe who reaffirmed his prior testimony but also admitted that it was possible that another bailiff could have answered a jury call. The State did not present any evidence contrary to the affidavits but argued that portions of the affidavits were attempts to impeach the jury's verdict. The court then announced that it was considering the proceedings on the motion for a hearing on inquiries as a hearing itself for the purpose of determining whether defendant was entitled to a new trial. Indicating that it had considered the trial court record, all the affidavits filed by the defense except those portions which referred to the effect of the alleged communications on the jury deliberations, the testimony of Bailiff Goe, the written instructions given to the jury,[5] arguments of counsel, the polling of the jury, and the court's own knowledge of certain events during deliberations,[6] the court denied the motion for a new trial. The court specifically found that the evidence clearly established the defendant's guilt beyond a reasonable doubt, that Goe's communication with the jurors was not intended to influence the deliberations, that the polling of the jury conclusively established that the communication did not affect the verdict, and that the defendant had not been prejudiced. In response to a question from defense counsel, the court additionally stated:
 
 
 7
 'The Court finds that the only evidence of any communication established here is the communication testified to by Mr. Goe in the manner and form as stated by Mr. Goe.'On direct appeal, the Supreme Court of Illinois affirmed the conviction. People v. Tobe, 49 Ill.2d 538, 276 N.E.2d 294 (1971). The court in pertinent part found:
 
 
 8
 'The trial court did not err in not setting aside the verdict because the defendant was not present at the time of the communication, as the defendant says was necessary. As was stated in Mills, (People v. Mills, 40 Ill.2d 4, 237 N.E.2d 697 (1968)) if there was a communication to the jury by the court outside the presence of the defendant and it is apparent that no prejudice resulted, the verdict will not be set aside. We do not judge that the communication between the jurors and the bailiffs was coercive and prejudicial as the defendant claims. Considering the length of the trial (5 days) and the time the jury spent in deliberating (approximately 7 hours), we do not believe it can be reasonably said that the statements of the bailiffs, that the jurors should continue to deliberate until they reached a verdict can be regarded as coercive.'
 
 
 9
 People v. Tobe, 49 Ill.2d at 543-544, 276 N.E.2d at 298.
 
 
 10
 On June 9, 1972, defendant filed a petition for a writ of habeas corpus in the federal district court together with a supporting memorandum seeking issuance of the writ or alternatively an evidentiary hearing on the ground that the alleged jury communications violated his sixth amendment right to a fair and impartial jury. On September 26, 1972, respondents filed a Fed.R.Civ.P. 12(b) (6) motion to dismiss. By Memorandum Opinion and Order on December 18, 1972, 352 F.Supp. 218, the district court denied the motion to dismiss on the grounds that the state trial court's finding of a single communication was not supported by the record[7] and that although the Illinois Supreme Court considered all the alleged communications in determining the question of prejudice, it failed to evaluate them in light of the principles set forth in 'Allen charge' cases. The court allowed the parties time to submit any additional documentary evidence or to request a hearing for the presentation of testimonial evidence. Based on the trial record and the only additional evidence submitted, a further affidavit of the forelady of the jury, the district court issued a second Memorandum Opinion and Order granting the petition for writ of habeas corpus (February 22, 1973). The court found that:
 
 
 11
 '(1) on more that one occasion, a bailiff or bailiffs responded, without the trial judge's knowledge, to inquiries from the deliberating jury as to what they should do if they were deadlocked;
 
 
 12
 (2) the essence of these responses was that the jury had to keep deliberating and reach a verdict;
 
 
 13
 (3) none of the responses contained the admonition that no juror should relinquish his conscientiously held convictions to join in a majority verdict;
 
 
 14
 (4) respondents have failed to show that the responses were not coercive;
 
 
 15
 (5) the nature of the responses involved such a probability of prejudice that they must be deemed to have caused an inherent lack of due process.'
 
 II
 
 16
 In Illionis, a jury verdict will not be set aside upon the occurrence of a communication between the jury and the court or some third person outside the presence of the defendant where it is apparent that no prejudice has resulted. People v. Mills, 40 Ill.2d 4, 14-15, 237 N.E.2d 697, 702-703 (1968); People v. Tilley, 411 Ill. 473, 477-478, 104 N.E.2d 499, 501-502 (1952); People v. Brothers, 347 Ill. 530, 548, 180 N.E. 442, 447-448 (1932). In an attempt to make a showing of prejudice based on the affidavits of jury members, actual evidence of the nature of outside influences exerted on the jury during deliberations will be considered, but evidence relating to the effect of such influences on the mental processes of jury members is inadmissible. People v. Pulaski, 15 Ill.2d 291, 300, 155 N.E.2d 29, 34 (1958). Because the actual effect of the conduct on the minds of the jury cannot be proved, the Illinois Supreme Court has held that the standard to be applied is whether the 'conduct involved 'such a probability that prejudice will result that it is (to be) deemed inherently lacking in due process.' Estes v. State of Texas, 381 U.S. 532, 542-543, 85 S.Ct. 1628, 1633, 14 L.Ed.2d 543.' People v. Tobe, 49 Ill.2d at 544, 276 N.E.2d at 298.
 
 
 17
 In Parker v. Gladden, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966), the Supreme Court of the United States reversed the Oregon Supreme Court's approval of the defendant's conviction where the trial court bailiff told one juror that the 'wicked fellow was guilty' and told another juror that the Supreme Court would correct an erroneous guilty verdict. There one of the jurors testified that she was prejudiced by the statements. In the present case, one juror said that 'she signed a verdict in which she didn't believe' and another juror said he knew that the bailiff's statements 'influenced others (of the jurors) to reach the verdict.' People v. Tobe, 49 Ill.2d 538, 542, 276 N.E.2d 294, 297 (1971).
 
 
 18
 In Parker, the Supreme Court said, 385 U.S. at 364 and 366, 87 S.Ct. at 470, 471:
 
 
 19
 'We believe that the statements of the bailiff to the jurors are controlled by the command of the Sixth Amendment, made applicable to the States through the Due Process Clause of the Fourteenth Amendment. It guarantees that 'the accused shall enjoy the right to a . . . trial, by an impartial jury . . .'
 
 
 20
 . . . .to
 
 
 21
 '. . . In any event, petitioner was entitled to be tried by 12, not 9 or even 10, impartial and unprejudiced jurors.'
 
 
 22
 The Parker court further pointed out 'that the official character of the bailiff-- as an officer of the court as well as the State-- beyond question carries great weight with a jury . . ..' (385 U.S. at 365, 87 S.Ct. at 470).
 
 
 23
 In Jenkins v. United States, 380 U.S. 445, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965), the defendant's conviction was reversed because the jury after two hours sent a note to the trial judge that it was unable to agree upon a verdict whereupon the judge recalled the jury to the courtroom and said that 'you have got to reach a decision in this case.' The Supreme Court said, 380 U.S. at page 446, 85 S.Ct. at page 1060:
 
 
 24
 '. . . We conclude that in its context and under all the circumstances the judge's statement had the coercive effect attributed to it.'In the present case, it is immaterial whether the jurors believed that the bailiffs were or, as is more probable, the judge through the bailiffs was telling them over and over again in one form or another that 'You must reach a decision.' In either case the statements were not only probably but were presumptively coercive and prejudicial.
 
 
 25
 Evidence of communications during deliberations concerning the case on trial outside the presence of defendant and his counsel are presumptively prejudicial. This presumption must be rebutted by evidence showing that the communications were harmless or lacked prejudice. Remmer v. United States, 347 U.S. 227, 229, 74 S.Ct. 450, 98 L.Ed. 654 (1954) (citing Mattox v. United States, 146 U.S. 140, 148-150, 13 S.Ct. 50, 36 L.Ed. 917 (1892); Wheaton v. United States, 133 F.2d 522, 527 (8th Cir. 1943)).[8]
 
 
 26
 In the instant case, the question of whether the alleged communications were harmless was never confronted by the state trial judge inasmuch as he denied the occurrence of all inquiries except the one that actually reached the court. This determination in the face of uncontradicted affidavits was erroneous. The Supreme Court of Illinois, while not directly commenting on this erroneous finding, nevertheless considered the question of lack of prejudice in light of all the alleged occurrences. This assumption that all the alleged inquiries took place is inconsistent with its determination that the defendant was given a meaningful hearing on this point. A hearing cannot be 'meaningful' when the judge ignores uncontradicted evidence. By denying that other inquiries took place, the judge did not 'determine whether the bailiffs prejudiced the defendant's right . . .' People v. Tobe, 49 Ill.2d at 542, 276 N.E.2d at 297.[9] Consequently, this error resulted in the question of prejudice never having been adequately determined and the presumption that prejudice did exist was never rebutted.[10]
 
 
 27
 Finally, the answers to the jury's questions were all, as the district judge found, 'akin to an 'Allen charge' instruction, without the admonition that no juror should relinquish his conscientiously held convictions to join in a majority verdict.'[11] These statements have a coercive effect resulting in prejudice to the defendant where they are void of such an admonition.
 
 
 28
 The peculiar circumstances of this case do not expunge these communications of the coercive effects of variations of the Allen charge of this ilk. The fact that the answers came from bailiffs rather than a judge is irrelevant (see discussion of Parker v. Gladden, supra).[12] The fact that the majority's view of the case was not reinforced by the responses does not show, as the prosecution argued, that Allen-type coercion was lacking. Although the Allen charge cases generally have been concerned with pressure exerted on the minority, any influence which emphasizes the importance of agreement to the exclusion of the dictates of conscience is coercive and prejudicial. See United States v. Thomas, 146 U.S.App.D.C. 101, 449 F.2d 1177, 1187 (1971) (en banc).
 
 
 29
 Finally, although the jury was polled, we do not think that circumstance by itself established a lack of prejudice foreclosing further inquiry. United States v. Grosso, 358 F.2d 154, 160 (3rd Cir. 1966). In cases where the coercion is not obvious, such as a bribe or threat, this approach would leave the question of coercion to the jury members and they are not empowered to determine what amounts to legal coercion.
 
 
 30
 Under all the circumstances of this case, the district court's grant of the petition for writ of habeas corpus was not clearly erroneous.
 
 
 31
 Affirmed.
 
 
 
 *
 District Judge Omer Poos of the Southern District of Illinois is sitting by designation. 495 F.2d-- 15 1/2
 
 
 [1]
 The affidavit detailed the following questions and answers as related by the forelady:
 Q: 'What happens if we cannot reach a decision?
 A: 'Keep deliberating, you must reach a verdict.'
 Q: 'We think we have a decision; We can't sway a couple of people; Does the majority rule?'
 A: 'You must reach a unanimous verdict.'
 Q: 'Are there any other alternatives than the ones we have if we cannot come up with a decision?'
 A: 'Keep deliberating, you must reach a decision.'
 The fourth question 'was a reiteration of a combination of the first three inquiries' and the answer 'was essentially the same as the first three answers.'
 
 
 [2]
 'The Court has, in its notes, as I have stated, an indication that at 3:17 p.m. the buzzer did ring and there was then an inquiry from the Bailiff advising me that the jury had made inquiry, 'What would happen if they did not reach a verdict?' and the Bailiff was told to tell them, 'Everything was in the instructions.'
 '. . . The Court does follow the practice of recording every buzzer that rings while a jury is out.
 'The Court does not permit people back in the back area because I want to hear what is going on . . ..
 'And I record those things. And, as I say, these are the records that I have. I was gone while the jury was gone. I came back perhaps about five minutes after the jury came back . . . after dinner, and there is no other indication, other than what I have indicated, and you heard the Bailiff, and he keeps no date book.'
 
 
 [3]
 'COURT: . . . After considering the communications which have been alleged and which this Court is aware of, this Court cannot see, in good conscience, how this defendant was in any way prejudiced by those communications
 'DEFENSE: Are you assuming, for the purpose of denying a hearing, that everything Mrs. Bradfield (the forelady) says is true?
 'COURT: The Court has made whatever statement it cares to make. I think I have covered all the facts-- all the phases that I would care to state at this time.'
 
 
 [4]
 Questions and answers summarized by the jurors included the following:
 Q: 'We asked Judge Downing if there were any more alternatives than the ones we had been given and what we should do if we could not reach a decision.'
 A: 'The answers we received from Judge Downing through the bailiff were 'to follow the instructions, to keep deliberating, and that we had to reach or come to a decision."
 Q: "What do we do if we are deadlocked? and 'Are there any more alternatives than the ones we have?"
 A: "You must continue to deliberate. You have to reach a verdict."
 Q: 'Each of the questions we asked were concerned with what would happen if we could not agree on a verdict.'
 A: 'After the first question we were told to reread the instructions and keep deliberating. After the next question we were told by a bailiff: 'You'll have to stay in there until you come up with a decision."
 
 
 [5]
 Insofar as the instructions are pertinent, they included the following:
 'Court's Instruction No. 1. Any verdict you reach must be unanimous. And in your deliberations you should examine the questions submitted with a proper regard and consideration for the opinions of each other. You should listen to each other's arguments with an open mind, and you should make every reasonable effort to reach a verdict.
 'People's Instruction No. 13 . . .. Your agreement upon a verdict must be unanimous. Your verdict must be in writing and signed by all of you . . ..'
 
 
 [6]
 The Court reiterated the measures it takes during deliberations and that it had recorded only one communication, supra n. 2
 'The notes of the Court indicate the following: the jury retired in this case at 11:23. The jury went to lunch at 11:30. At 12:15 the jury returned from lunch. At 3:17 the Court notes a buzzing from the jury and then an inquiry as advised by Mr. Goe . . .. 5:25 the jury went to dinner. 6:05 the jury returned from dinner. 6:10 the Court returned from dinner. 6:30 there was a jury buzz. The bailiff advised after being directed by the Court to inquire what the buzz was about that the jury had reached a verdict-- at 6:43 the jury came into the court room and returned its verdict of guilty of voluntary manslaughter.'
 
 
 [7]
 'Petitioner claims that the judge's finding that there was only one communication with the jury while it deliberated is clearly erroneous. Under 28 U.S.C. 2254(d), he has the burden of rebutting the presumption in favor of the correctness of this finding with convincing evidence, unless one of the circumstances set forth in paragraphs (1) to (8) appears or is established. After careful consideration, this Court is forced to conclude that the finding of a single inquiry and response is contrary to the record
 'The affidavits of the jurors, bailiffs, and deputy sheriff all state that more than one inquiry was made and responded to, and several state that these additional inquiries were made after the jury knocked on the door of the jury room rather than after sounding the buzzer connected with the judge's chambers. Although Goe testified that he did not know of and had not been told of any further communications, he also testified that he was not present outside of the jury room at all times during the deliberations. And although the judge recalled only one inquiry, he could not be expected to know of others made after the jury knocked on the door. No reason for the jurors, bailiffs, and deputy to have lied in their affidavits was suggested. Yet, for the trial judge to reach his finding of but a single inquiry and response, he had to disregard them completely.'
 
 
 [8]
 Although some jurisdictions have adopted a conclusive presumption of prejudice under these circumstances, the weight of authority recognizes only a rebuttable presumption. Rice v. United States, 356 F.2d 709, 715-718 (8th Cir. 1966); Chamber v. United States, 237 F. 513, 520-521 (8th Cir. 1916). See People v. Brothers, 347 Ill. 530, 552, 180 N.E. 442, 450 (1932) (Dunn & DeYoung, J.J., dissenting)
 
 
 [9]
 A full hearing is appropriate to 'determine the circumstances, the impact thereof upon the juror(s), and whether or not it was prejudicial . . ..' Remmer v. United States, 347 U.S. 227, 230, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954)
 
 
 [10]
 One obvious effect of the trial judge's error was to remove the burden from the prosecution to establish that the conduct was harmless to the defendant. Id. 347 U.S. at 229, 74 S.Ct. 450, 98 L.Ed. 654
 
 
 [11]
 For a history of the 'Allen charge,' see United States v. Bailey, 468 F.2d 652, 661-669 (5th Cir. 1972). Although the Allen charge itself has not been held to be unconstitutional, its exact language or a close paraphrase thereof is the ultimate permissible constitutional limit. Cf. Green v. United States, 309 F.2d 852 (5th Cir. 1962)
 
 
 [12]
 It is error even for the judge to communicate with the jury through the medium of the bailiff. United States v. Grosso, 358 F.2d 154, 158 (3rd Cir. 1965); Henderson v. United States, 204 F.2d 126, 127 (6th Cir. 1953)