John KELLER

v.

George PETSOCK, Warden; Attorney General of Commonwealth of Pennsylvania; District Attorney, Allegheny County.

Appeal of John KELLER, Appellant.

No. 87–3127.

United States Court of Appeals, Third Circuit.

Argued Jan. 11, 1988.

Decided Aug. 11, 1988.

---

Frank Arcuri (argued), Asst. Federal Public Defender, Pittsburgh, Pa., for appellant.

Michael W. Streily (argued), Allegheny County District Attorney's Office, Pittsburgh, Pa., for appellee.

Before HIGGINBOTHAM and BECKER, Circuit Judges, and SHAPIRO, District Judge.[*]

* Honorable Norma L. Shapiro, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr.,
Circuit Judge.

In this appeal from the dismissal of a petition for writ of habeas corpus challenging a state conviction, 28 U.S.C. § 2254 (1982), petitioner John Keller claims that he was denied the right to trial by an impartial jury. *Parker v. Gladden,* 385 U.S. 363, 364, 87 S.Ct. 468, 470, 17 L.Ed.2d 420 (1966) (*per curiam*); *Turner v. Louisiana,* 379 U.S. 466, 467–71, 85 S.Ct. 546, 547–49, 13 L.Ed.2d 424 (1965). We will vacate the order of the district court dismissing the petition, and remand this case to the district court for an evidentiary hearing. We will, in addition, deny the petition as to one of the claims presented.

### I.

Keller was convicted by a jury in the Court of Common Pleas of Allegheny County, Pennsylvania, of rape, involuntary deviate sexual intercourse and simple assault, on June 11, 1976. On June 21, his attorney wrote a letter to the trial judge informing him that one of the jurors had visited the attorney that day. This juror had informed the attorney that

> she and four other jurors did not agree with the verdict but did not realize at the time of the poll that they could disagree.... She also indicated that, during the course of deliberations, there was a request to see [the judge]. The tipstaff advised [the jurors] that they could not see [the judge]; they were not advised that they could direct an inquiry to [the judge].

Letter from H. David Rothman, Esq. to the Honorable Joseph H. Ridge (June 21, 1976), *reprinted in* Appendix ("App.") at 353. Counsel then filed a post-trial application to vacate the verdict, which alleged that the jurors' failure to understand the polling procedures, and the tipstaff's failure to in-

form the jury that it "could have communicated with the [trial judge] in writing," deprived Keller of "a fair trial, due process, and equal protection of the law." App. at 71. He requested a hearing and moved to vacate the verdict. At the sentencing on July 6, 1976, the trial court denied this motion without a hearing, *id.* at 80, and sentenced Keller to a term of two and a half to five years. *Id.* at 87.

On direct appeal, the Superior Court affirmed the sentence and conviction without opinion. App. at 370. The Supreme Court of Pennsylvania denied allocatur on August 9, 1978. *Id.* at 390. A request for reconsideration of this decision was denied by the Supreme Court on September 28, 1978. *Id.* at 356.

Keller then pursued claims through the procedures set forth by the Pennsylvania Post–Conviction Hearing Act ("PCHA"). Pa.Cons.Stat. tit. 42, §§ 9541–9549 (Purdon 1982) (current version at 1988 Pa.Legis. Serv. 229–33 (Purdon)). He filed his first PCHA petition *pro se* on December 28, 1978. The court appointed counsel and returned the petition to counsel for more specific pleading. Keller filed a second PCHA petition *pro se* in January 1979. App. at 120. This petition was also referred to counsel. *Id.* at 121. However, at the time Keller filed his first petition for writ of habeas corpus in federal district court on November 6, 1984, App. at 417–429, neither of the PCHA proceedings had progressed further.[1] Keller's first habeas corpus petition asserted numerous grounds for relief, many of which had not been presented to the state courts. App. at 417–29. The district court dismissed this first petition for failure to exhaust state remedies. App. at 439–40. This court denied Keller's subsequent petition for certificate of probable cause on December 27, 1985, *id.* at 469, and the Supreme Court denied certiorari on April 30, 1986. *Id.* at 470.

---

1. The record does not clearly indicate the cause of the delay in the PCHA proceedings. Keller was paroled on March 2, 1981, and then arrested again. He was convicted in January 1984 of involuntary deviate sexual intercourse, indecent assault and unlawful restraint. On January 18, 1984, Keller was sentenced to six and one-half to twenty years. App. at 431. Parole was then revoked on the first conviction. The PCHA proceedings relating to his first conviction then resumed sometime in 1985. *Id.* at 430–33.

By the time Keller filed the instant petition for writ of habeas corpus in federal district court on July 28, 1986, the trial court had denied both the PCHA petitions (which had apparently been consolidated), and an appeal was pending before the Pennsylvania Superior Court. Finding that Keller's second habeas petition contained only exhausted claims of the denial of a trial by a fair and impartial jury, the federal magistrate who reviewed the case nevertheless recommended dismissing the petition. App. at 472. The magistrate stated that "considerations of comity would appear to dictate that this court not hear the petition on the merits while petitioner's [PCHA] appeal is pending before the Superior Court of Pennsylvania." *Id.* at 473. After receiving Keller's objections to the magistrate's report, the district court adopted it and dismissed the habeas peti-

tion without prejudice on January 29, 1987. *Keller v. Petsock,* No. 86–1676, slip op. at 1–2 (W.D.Pa. Jan. 29, 1987), *reprinted in* App. at 487–88. Keller then took the instant appeal.

The PCHA proceedings continued to wind their way to an end. On December 9, 1986, the Pennsylvania Superior Court, after noting the "reprehensible delays which occurred in this case," App. at 477, affirmed the denial of the PCHA petition.[2] *Id.* Keller then filed a petition for allocatur to the Supreme Court of Pennsylvania on January 8, 1987. This petition was denied on August 6, 1987.[3]

## II.

We must decide three matters: (1) whether state court remedies with respect to Keller's legal claims have been exhausted;[4] (2) whether Keller's claims merit fur-

2. The Superior Court's opinion also noted that "[d]uring the six-year delay, the case files of appellant's trial attorney, the public defender's office and the district attorney's office were lost or destroyed." App. at 478.

3. None of the four claims adjudicated in this PCHA petition are relevant to the claims that we consider here. As characterized by the Pennsylvania Superior Court, the state claims included ineffectiveness of counsel "for failing to: 1) present character evidence on behalf of appellant; 2) interview, subpoena and introduce testimony of defense witnesses; and 3) introduce evidence of impeachment of the prosecutrix. Finally he claims that the unreasonable delays in the adjudication of his PCHA claims deprived him of federal and state constitutional rights...." Appendix at 478.

4. While the basis for the district court's dismissal of Keller's petition, i.e., the comity problem, was mooted during the pendency of this appeal, we nevertheless observe that the district court's disposition of the petition poses difficult questions. This court has never explicitly foreclosed the possibility that a district court could abstain from a decision on the merits of an exhausted claim until the conclusion of pending state collateral proceedings. There may be pragmatic reasons, such as the unavailability of the state court record, to so dispose of a case. Furthermore, at least one compelling comity concern is always present when state collateral proceedings are pending: the state court proceedings might ultimately moot the federal question presented in the habeas petition.

In this case, nevertheless, countervailing considerations make the district court's abstention from a decision on the merits of Keller's claims a troubling exercise of comity. The exhaustion rule is itself based on comity concerns. *See Rose v. Lundy,* 455 U.S. 509, 515, 102 S.Ct. 1198, 1201, 71 L.Ed.2d 379 (1982). This Court has held that a habeas petitioner need not climb the exhaustion ladder twice—he or she need not exhaust a claim both on direct appeal *and* in state post-conviction proceedings. *See Swanger v. Zimmerman,* 750 F.2d 291, 295 (3d Cir.1984). The *Swanger* rule, however, conflicts with the procedure adopted by the district court here: dismissal of a habeas petition after concluding that it contains only exhausted claims, when it is filed while state collateral proceedings are pending with respect to other claims.

Furthermore, such an exercise of comity here would in effect leave adjudication of Keller's exhausted claims at the mercy of a state post-conviction process that took almost nine years to complete. While the issue of delay was not raised in Keller's petition, this court has repeatedly held that "inexcusable or inordinate delay by the state in processing claims for relief may render the state remedy effectively unavailable," *Wojtczak v. Fulcomer,* 800 F.2d 353, 354 (3d Cir.1986), and thus may excuse the requirement of exhaustion, *id.; See also* 28 U.S.C. § 2254(b), or even provide a basis for habeas relief. *Burkett v. Cunningham,* 826 F.2d 1208, 1221 (3d Cir.1987). No logical basis exists to consider delay in the context of an unexhausted claim but to ignore it in the context of an exhausted claim. If anything, the habeas petition containing only exhausted claims presents a more compelling situation for a federal court not to defer to comity concerns. This is especially true where, as here, the PCHA petition does not contain any claims that were exhausted on direct appeal. *See supra* n. 3.

ther fact-finding; and (3) what the appropriate fact-finding court is.

## A. *Exhaustion*

■ Before us are four separate claims of the denial of the rights to trial by a fair and impartial jury. We agree with the district court's determination that two of the four claims have been exhausted: (1) the tipstaff's remark to the jury that the judge could not be seen, and (2) the tipstaff's failure to inform the jury of how the jury could communicate with the judge. Keller exhausted these issues by giving, "in his petition for allocatur, ... the highest Pennsylvania state court the opportunity to correct [the] alleged constitutional infirmity in his criminal conviction[ ]." *Chaussard v. Fulcomer*, 816 F.2d 925, 928 (3d Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 139, 98 L.Ed.2d 96 (1987) (citation omitted).[5] *See also Swanger v. Zimmerman*, 750 F.2d 291, 295 (3d Cir.1984) ("It is well-settled that a claim raised in state court at trial and on direct appeal satisfies the exhaustion requirement and that a habeas corpus petitioner need not also raise the claim in a collateral attack before proceeding in federal court.") (citation omitted).

■ Keller's third claim is one not raised in his *pro se* petition for writ of habeas corpus, but rather in the brief to this Court, namely that

> the trial court's actions in informing the jury that it would not entertain questions during their deliberations constitutes reversible error and deprived Keller of due process of law.

Appellant's Brief at 19. Keller's petition for allocatur to the Pennsylvania Supreme Court contained a similar but not identical

claim—that "[a]t no time during the Court's charge was the jury informed as to how they could direct questions to the Court during their deliberation." App. at 374. It thus appears that Keller framed this claim to the Pennsylvania Supreme Court as an error of omission, whereas to this court he argues that the trial judge affirmatively and erroneously informed the jury that he would not entertain questions during deliberations.

Although the two claims appear to be substantially the same, their legal ramifications differ enormously. In determining whether a defendant was deprived of a fair and impartial jury, the claim that the trial judge affirmatively refused to entertain questions from the jury could itself provide a possible basis for relief based on "pressures or partiality on the part of the court." *Government of the Virgin Islands v. Gereau*, 523 F.2d 140, 150 (3d Cir.1975), *cert. denied,* 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 323 (1976); *cf. Truscott v. Chaplin*, 403 F.2d 644 (3d Cir.1968) (inquiry by judge whether jury is close to verdict not reversible error). By contrast, if the trial judge's charge simply omitted the practical information on how the judge could be contacted by the jurors, then it bears only on how prejudicial the tipstaff's later remarks to the jurors were; it would not, by itself, justify habeas relief. While the " 'method of analysis' " of either claim is similar, *Zicarelli v. Gray*, 543 F.2d 466, 472 (3d Cir.1976) (in banc) (quoting *Stanley v. Illinois*, 405 U.S. 645, 658 n. 10, 92 S.Ct. 1208, 1216, 31 L.Ed.2d 551 (1972)), their factual premises, and thus their legal significance in the sixth amendment analysis, are quite different. *See Zicarelli*, 543 F.2d at 473 (sixth amendment claim based on

---

**5.** The exact allegations regarding these claims raised by Keller in his petition for allocatur to the Supreme Court were:

> The judge's tipstaff told the jury that they could not talk to the judge. The tipstaff did not inform the jury that they could direct written questions to the judge. The tipstaff did not inform the court of the jury's request. App. at 374. Based on these allegations, Keller alleged that "[t]he decision of the lower court is not in accord with the decisions rendered by this Honorable Court in *Welshire v. Bruaw*, [200

A. 67 (Pa.1938) ], and *Commonwealth v. Zlatovich*, 269 A.2d 469 ... ( [Pa.] 1970)." *Id.*

We are satisfied that Keller's citation of *Welshire* and *Zlatovich* meets the exhaustion requirement that these "federal claim[s] ha[ve] been fairly presented to the state courts." *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). "Both the legal theory and the facts on which th[ese] claim[s] rest[ ]," *Gibson v. Scheidemantel*, 805 F.2d 135, 138 (3d Cir.1986), were raised in the petition for allocatur.

venue is not equivalent to sixth amendment claim based on fair cross-section analysis); *but cf. Bisaccia v. Attorney General of New Jersey,* 623 F.2d 307, 312 (3d Cir.) (substance of due process claim presented to state court "virtually indistinguishable" from federal claim), *cert. denied,* 449 U.S. 1042, 101 S.Ct. 622, 66 L.Ed.2d 504 (1980).

The legal claim before this Court is not the same as the one presented to the state courts, and we thus find that it has not been exhausted. *See Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). Counsel for Keller withdrew at oral argument this unexhausted claim. Transcript of argument at 32; see *Dooley v. Petsock,* 816 F.2d 885, 888 n. 1 (3d Cir.) (habeas petitioner permitted by court to remove unexhausted claim, thus leaving only exhausted claims in petition), *cert. denied,* ––– U.S. –––, 108 S.Ct. 182, 98 L.Ed.2d 135 (1987). We are therefore not confronted with a mixed petition that requires dismissal. *Rose v. Lundy,* 455 U.S. 509, 522, 102 S.Ct. 1198, 1205, 71 L.Ed. 2d 379 (1982).

■■■ Keller's fourth claim concerns the jurors' alleged misunderstanding of the polling procedures. This specific factual link to the claim of jury partiality was raised before the trial court, App. at 71, but it was not presented to the Pennsylvania Supreme Court in the petition for allow-

ance of appeal. The state, however, did not flag the lack of exhaustion of this issue in the district court, and concedes here that, under *Granberry v. Greer,* 481 U.S. 129, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987), its "omission ... makes it appropriate for the court of appeals to take a fresh look at the issue." *Id.* at 1675; *see* Transcript of argument at 20.

While the unanimous *Granberry* Court held that lack of exhaustion of a claim is not an absolute bar to its consideration on the merits by a federal court of appeals, 107 S.Ct. at 1674, it also held that we must make an inquiry in each case as to whether the ends of justice would be better served by employing our discretion to excuse the exhaustion requirement. *Id.* at 1676.[6] The Court cautioned that where a claim "presents an issue on which an unresolved question of fact ... might have an important bearing, ... it is appropriate for the [reviewing] court to insist on complete exhaustion." *Id.* at 1675. The facts supporting this claim are completely unresolved, since no court has undertaken an evidentiary hearing. Two factors, nevertheless, persuade us to excuse the lack of exhaustion of this claim pursuant to *Granberry.* First, the state, having failed to raise the defense of non-exhaustion in the district court, does not object to this claim being considered in this Court. Transcript of Ar-

6. While it appears at first glance that the holding in *Granberry* might be confined to unexhausted claims that do "not raise even a colorable federal claim," 107 S.Ct. at 1675, or those that present a fundamental "miscarriage of justice," *id.* at 1676, a closer reading of the opinion points to its application to *any* claim before the court of appeals for which the state neglected to raise non-exhaustion in the district court. Two assertions in *Granberry* lead us to this conclusion. First, noting that the state could as a strategic matter, "seek a favorable ruling on the merits in the district court while holding the exhaustion defense in reserve for use on appeal if necessary," *id.* at 1674, the Court stated that such a maneuver could unfairly delay adjudication of a "meritorious" petition. *Id.* Second, the *Granberry* Court cited to *Frisbie v. Collins,* 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952), in support of its assertion that a claim embodying an *"evident* ... miscarriage of justice" should be reached by a court of appeals notwithstanding lack of exhaustion. 107 S.Ct. at 1676 (emphasis added). However, in *Frisbie,*

the Supreme Court had reversed a divided panel of the court of appeals, and affirmed the district court's denial of a petition for writ of habeas corpus. *Frisbie,* 342 U.S. at 523, 72 S.Ct. at 512. That is, *Frisbie* involved an unexhausted claim upon which reasonable jurists could, and did in fact, disagree—*not* a claim so self-*evidently* meritorious that a federal court had to reach it in order to rectify a "miscarriage of justice." 107 S.Ct. at 1676.

Moreover, as the *Granberry* Court itself noted, "the cases in which the nonexhaustion defense is not asserted in the district court may present a *wide variety of circumstances* which the Courts of Appeals, drawing on their familiarity with state criminal practice, are able *to evaluate individually."* 107 S.Ct. at 1676 (emphases added). Thus, we conclude that *Granberry* stands for the proposition that any time the state fails to raise lack of exhaustion of a claim in the district court, the court of appeals can, in its discretion, reach the merits of that claim if "the interests of justice" so indicate. *Id.*

gument at 20. Second, as we discuss in the next section, this claim plainly relates to the forbidden area of intra-jury influences, *see Gereau*, 523 F.2d at 150, and therefore cannot be considered on its merits at all. Under these circumstances, the "interests of justice [are not] better served ... by requiring additional state proceedings," *Granberry*, 107 S.Ct. at 1676, and therefore this Court will not "insist on complete exhaustion," *id.* at 1675, of this claim.

### B. *Denial of the Right to a Fair and Impartial Jury*

■ In *Government of the Virgin Islands v. Gereau*, we explained that courts have employed a three-step test for determining whether a verdict should be set aside because it was reached by a jury subject to improper influences. 523 F.2d at 148–53. The first two steps are essentially evidentiary: "(1) producing evidence competent to attack the verdict, and (2) establishing the existence of grounds recognized as adequate to overturn the verdict." *Id.* at 148. After a court has admitted these two categories of evidence under the stringent standards set forth by the case law, *id.* at 148–153, it may then determine the question of whether "the party seeking to impeach the verdict has suffered prejudice from the misconduct of the jury." *Id.* at 148.

■ Because of the detailed fact-finding that is required by this analysis, a court's inquiry into this question will, in the majority of cases, require an evidentiary hearing. Here, the state courts declined to hold a hearing, however, and thus the record is devoid of any findings of fact. We must therefore determine whether Keller's claims have enough facial merit to require further inquiry.

The Supreme Court has stated that "where an applicant for a writ of habeas corpus alleges facts which, if proved, would entitle him to relief," further fact-finding is indicated. *Townsend v. Sain*, 372 U.S. 293, 312, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963); *accord Procunier v. Atchley*, 400 U.S. 446, 451, 91 S.Ct. 485, 488, 27 L.Ed.2d 524 (1971) ("Our decisions

make clear that [the petitioner] must ... show that his version of the events, if true, would require the conclusion that" he or she is entitled to relief, before an evidentiary hearing can be held.); *cf. Mayberry v. Petsock*, 821 F.2d 179, 187 (3d Cir.) (insufficient showing to warrant discovery and hearing), *cert. denied*, — U.S. —, 108 S.Ct. 336, 98 L.Ed.2d 362 (1987). Taking Keller's bald factual assertions in the light most favorable to him, we find that his two claims relating to the tipstaff are of sufficient constitutional magnitude to require further factual development.

Evaluation of claims such as Keller's first two claims necessarily turns to a large degree on their facts. *See, e.g., Parker*, 385 U.S. at 363–65, 87 S.Ct. at 469–71; *Turner*, 379 U.S. at 467–71, 85 S.Ct. at 547–49; *Gereau*, 523 F.2d at 151–53; *United States ex rel. Tobe v. Bensinger*, 492 F.2d 232, 234–36 (7th Cir.1974); *United States v. Brumbaugh*, 471 F.2d 1128, 1129–30 (6th Cir.), *cert. denied*, 412 U.S. 918, 93 S.Ct. 2732, 37 L.Ed.2d 144 (1973); *Wheaton v. United States*, 133 F.2d 522, 523–26 (8th Cir.1943). The trial under scrutiny here occurred over eleven years ago, the tipstaff in question has apparently passed away, Transcript of argument at 34, records are apparently lost or destroyed, *id.* at 24, and it is questionable whether the jurors can even be contacted to testify at a hearing so long after the event in question. It is not clear, therefore, what facts may emerge from a hearing that would offset Keller's allegations regarding the tipstaff's communications to the jury. Moreover, none of Keller's allegations have yet been subjected to a credibility determination.

What is certain, nevertheless, is that these two claims do overcome the evidentiary obstacles described by this Court in *Gereau*. Any juror who can still be found may " 'testify to any facts bearing upon the question of the existence of any extraneous influence, although not as to how far that influence operated upon his [or her] mind.' " 523 F.2d at 149 (citation omitted). Thus the jurors may certainly testify as to the tipstaff's remarks. Furthermore, assuming *arguendo* that the tipstaff did indeed communicate with the jurors in the

manner alleged, such communication would constitute "grounds upon which a verdict may be overborne." *Id.* at 150. Not only do Keller's assertions regarding the tipstaff's communication meet these evidentiary standards, they also, as the State concedes, establish a *prima facie* case of prejudice. Transcript of argument at 28; *see Gereau,* 523 F.2d at 154 ("certain types of misconduct possess such a high potential of prejudice that they are considered *prima facie* prejudicial."). Thus, we perceive that Keller has alleged more than enough to merit further fact-finding. *See United States ex rel. McNair v. New Jersey,* 492 F.2d 1307, 1309 (3d Cir.1974) ("an evidentiary hearing is an *a fortiori* proposition if the state record is deficient in critical areas."). We are not suggesting that the district court must find that Keller's allegations merit relief. The allegations merely obtain for Keller a hearing; the district court must make findings as to the credibility of the witnesses and weight of the evidence, and Keller has the burden of proof to establish the truthfulness of his allegations.

■ By stark contrast to the tipstaff claims, Keller's claim that the jury misunderstood the polling procedures does not merit further factual development because it conflicts with the rule against considering "evidence of discussions among jurors, intimidation or harassment of one juror by another, and other intra-jury influences on the verdict...." *Gereau,* 523 F.2d at 150. We therefore deny the petition for writ of habeas corpus as to this claim only.

### C. *What Remedy?*

Our determination that two of Keller's claims merit further inquiry does not end our analysis. The parties dispute the exact relief that should be afforded by this Court. Keller claims that a remand to the district court is appropriate; the state argues that this Court should give the state courts an opportunity to hold a hearing. Transcript of argument at 22 & 28.

■ We do not have authority under the federal habeas statutes, 28 U.S.C. § 2241 or § 2254, to remand a habeas corpus petition to a state court for an evidentiary hearing. Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts does give, however, federal district courts the authority to hold evidentiary hearings.[7] As the Supreme Court explained in *Townsend v. Sain,*

> The language of Congress, the history of the writ [of habeas corpus], the decisions of this Court, all make clear that the power of inquiry on federal habeas corpus is plenary. Therefore, where an applicant for a writ of habeas corpus alleges facts which, if proved, would entitle him to relief, the federal court to which the application is made has the power to receive evidence and try the facts anew.... The appropriate standard ... is this: Where the facts are in dispute, the federal court in habeas corpus *must* hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding. *In other words a federal evidentiary hearing is required unless the state-court trier of fact has after a full hearing reliably found the relevant facts.*

372 U.S. at 312–13, 83 S.Ct. at 756–57 (emphasis added). *Townsend* does not suggest that the state courts should, after having foregone the opportunity to hold an evidentiary hearing and resolve the issue, be given another opportunity to do so.

To implement the state's request to remand the case to the state courts, this Court would have to issue a writ of habeas corpus, conditioned on the state courts holding a hearing within a specified amount of time. *See, e.g., United States ex rel. McGough v. Hewitt,* 528 F.2d 339 (3d Cir.1975). This is a drastic measure: one that we cannot grant because we cannot hold as a matter of law, on the undeveloped record in this case, that Keller is

---

7. This rule provides:
   the [district] judge, after the answer and the transcript and record of state court proceedings are filed, shall, upon a review of those proceedings and of the expanded record, if any, determine whether an evidentiary hearing is required.
   Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts.

entitled to habeas relief. Such a remedy would also contravene the policy underlying the exhaustion requirement. State courts are certainly entitled to have the first opportunity to review federal constitutional challenges to state convictions. *See Preiser v. Rodriguez*, 411 U.S. 475, 491, 93 S.Ct. 1827, 1837, 36 L.Ed.2d 439 (1973). There is no requirement, however, that they be given more than one opportunity to adjudicate these claims. Keller has given the state courts their first opportunity, and they did not seize it.[8] Therefore the federal district court must become the trier of fact.

### III.

For the foregoing reasons, we will vacate the district court's order, and remand the matter to the district court for further proceedings consistent with this opinion.[9] We will deny Keller's petition insofar as it is based on the jury's misunderstanding of the polling procedures.

---

**8.** As Keller stated in his *pro se* habeas corpus petition, "[t]he tragedy of the issue of the jurors in petitioner's case is that all arguments have been denied without an evidentiary hearing." App. at 325.

**9.** We note that, although Keller has apparently served his maximum sentence on the conviction being challenged here, he still meets the "custody" requirement of 28 U.S.C. § 2241(c)(3). *See*

*Jones v. Cunningham*, 371 U.S. 236, 241, 83 S.Ct. 373, 376, 9 L.Ed.2d 285 (1963). Should Keller be granted habeas corpus relief, the state concedes that it would affect the parole eligibility date on his second conviction. Transcript of argument at 38–39. On remand, the district court should also make specific findings with respect to this custody issue.