4 F.3d 997
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gerald "Chris" FRYE, Defendant-Appellant.
 No. 93-1018.
 United States Court of Appeals, Seventh Circuit.
 Argued June 9, 1993.
Decided Sept. 3, 1993.
 
 Before CUMMINGS, FLAUM and KANNE, Circuit Judge.
 
 ORDER
 
 1
 In May 1992 defendant Gerald "Chris" Frye was named in a two-count indictment. The first charged him with armed bank robbery in violation of 18 U.S.C. Sec. 2113(a) and (d), and the second charged him with using a firearm during a crime of violence in violation of 18 U.S.C. Sec. 924(c). A jury found him guilty on both counts, and he was sentenced to 130 months' imprisonment.
 
 
 2
 The evidence credited by the jury reveals that on May 20, 1991, Frye and a good friend, Kevin A. James, plotted to rob an Indianapolis branch of INB National Bank the next day. That night, in anticipation of the robbery, they stole a neighbor's car. In the morning James drove the stolen car and Frye drove his own car to a spot near the targeted bank. They parked Frye's car a short distance away and James drove them in the stolen car to the bank, which they entered armed with handguns and disguised by women's hosiery. However, the hosiery only partially obfuscated their appearances and several witnesses were able to get a good enough look at the thieves to identify them later. James and Frye took money from several cash drawers before the police arrived, escaped in the stolen car, which they later abandoned, and drove in Frye's car to James' apartment. There they divided the $3,476 in proceeds.
 
 
 3
 At Frye's trial, three bank employees and James, who had already been convicted of the robbery, identified Frye as one of the thieves. The getaway car was also identified, and Frye's fingerprint was found on one of its windows. A baseball cap with one of his hairs was discovered within a few feet from where the stolen car had been abandoned, and the cap was evident in bank surveillance photographs which were admitted at trial. James also identified the cap as having been worn by Frye during the robbery.
 
 
 4
 Frye raises a series of arguments challenging his conviction--none of which have merit. Perhaps the most patently absurd is the claim that the photo array by which he was identified was improper because it was not shown to the witnesses until nine months after the robbery. But Frye had not been identified as a suspect until that time. It would be nonsensical to exclude photographic identifications because of a lapse in time where the delay is caused by the defendant's having eluded detection.
 
 
 5
 Frye also suggests that the identification of him as a robber was deficient because the witnesses could not get a good look at him, because they were shown surveillance photographs after the robbery, because they were permitted to discuss the robbery together before being shown the photographic display, and because the display itself made Frye appear taller than the other potential suspects. The reliability of an identification is judged according to the totality of circumstances. Manson v. Brathwaite, 432 U.S. 98, 113-114. While we agree that as a general rule prosecution witnesses should not be brought together so that they can consolidate their versions of the event, the proper avenue for attacking the validity of the witness identifications in this case was through cross-examination. Here the witnesses testified they had sufficiently viewed the robbers during the commission of the crime so that their identification was accurate, and the jury believed them.
 
 
 6
 Frye next argues that the government violated Federal Rule of Criminal Procedure 12.1 by failing to give adequate notice concerning the witnesses it would rely on to place the defendant at the scene of the crime. At the commencement of the trial, Frye filed a motion in limine requesting the trial court to suppress any testimony from the three bank employees and James because the government had not served upon defendant or his attorney a written notice stating the names and addresses of its key witnesses. However, Rule 12.1(e) empowered the district court to grant an exception to this notice requirement. In his brief Frye concedes that he was not prejudiced by the government's failure to give him written notice that James would be a witness. Also, the government had formally notified Frye that it would call two of the bank employees as eyewitnesses to the robbery, and as to the third bank employee, Frye was given notice five days before the trial. This five-day notice could not have prejudiced Frye because this witness' testimony was cumulative to the testimony of the other two bank employees and James. Also, Frye had the opportunity to cross-examine this third employee before the commencement of evidence. Any prejudice, then, was harmless.
 
 
 7
 Frye would also have us overturn his conviction because the district court denied his request for expenses to hire an investigator. According to the defendant, this decision violated his Sixth Amendment right to effective representation. Such decisions by the trial judge will be upheld absent an abuse of discretion, United States v. Morrison, 946 F.2d 484, 490 (7th Cir.1991), certiorari denied, Anderson v. United States, 113 S.Ct. 826, and the key test is whether the investigative services were necessary for an adequate defense. United States v. Goodwin, 770 F.2d 631, 635 (7th Cir.1985), certiorari denied, 474 U.S. 1084. In this instance Frye had the opportunity to question all the government's witnesses before trial, and he was unable to name any alibi witnesses other than his mother, who testified that he was performing yard work at home on the day of the robbery. In essence, Frye was unable to suggest even faintly what an investigator might hope to learn that would relieve him of guilt. In these circumstances the district court did not abuse its discretion in denying the petition for investigatory expenses under 18 U.S.C. Sec. 3006A(e).
 
 
 8
 Next Frye disputes the trial court's decision to admit the testimony of an FBI hair analysis expert who said that defendant's hair fragments were present on the baseball cap found next to the getaway car. Frye contends that the hair sample had been tampered with because the envelope containing the evidence came to court with a small piece of cellophane tape over the seal. The FBI agent testified that he had received the baseball cap and Frye's hair by registered mail in a sealed envelope and a separate sealed paper bag. He also testified that the hair on the baseball cap matched the known sample of Frye's hair. In addition, an Indianapolis police officer testified that he found the baseball cap next to the getaway car and placed it in a clean paper bag after photographing it. He said he repackaged the baseball cap after examining it in his laboratory and resealed the bag and placed it in the Indianapolis police department property room, where another FBI agent recovered it and sent it by registered mail to the testifying FBI agent. This second FBI agent was authorized by court order to obtain a known hair sample from Frye, and he subsequently sealed it in a paper envelope which he sent by registered mail to the agent testifying about the baseball cap and hair fragments. Defendant is unable to show how this sequence of events, or the small existence of a piece of cellophane tape on an otherwise sealed envelope, suggests evidence of tampering. Even if it were improperly admitted, the error was harmless because of the other irrebuttable evidence of guilt. United States v. Lofton, 957 F.2d 476, 477-478 (7th Cir.1992).
 
 
 9
 Frye contends that James' testimony that he and Frye stole the getaway car the night before the robbery was inadmissible because the government had not given pre-trial notice under Rule 404(b) of the Federal Rules of Evidence. However, this testimony related to conduct intertwined with the charged offenses, so that Rule 404(b) is inapplicable. United States v. Goodapple, 958 F.2d 1402, 1407-1408 (7th Cir.1992). The district judge properly admitted this testimony "as part of the entire body of this crime" (Tr.374). In any event, the error at best was harmless. By the same token, there is no merit to Frye's complaint that the district court should have given his tendered instructions to view James' testimony carefully. The court did instruct the jury that the testimony of James "must be considered with caution and great care," an instruction that is fully consistent with this Circuit's Pattern Jury Instructions. I Federal Criminal Jury Instructions for the Seventh Circuit, Sec. 3.23, at 45 (Witness Who Has Pleaded Guilty). The language used by the district judge to instruct the jury was nearly identical to the instruction requested by the defendant; he has no legitimate basis to challenge the judge's choice of words when they were almost exactly the same as what he asked for. Anyway, the court gave other instructions regarding the credibility of witnesses and the jury's role in assessing their testimony. Consequently, no error has been shown.
 
 
 10
 Finally, Frye complains that the district court should have held a hearing based on the contact of a juror with a bailiff. Juror Benz asked the bailiff "if escorts could be provided to the jurors when they were through with their deliberations and needed to return to their cars." The bailiff told the juror "she would take care of the matter." As a result of this innocuous conversation, defendant moved for a mistrial on the ground that the contact had violated the Fifth and Sixth Amendments. The motion was overruled without a hearing.
 
 
 11
 It is settled that not every ex parte contact with the jury requires a mistrial. United States v. Williams, 737 F.2d 594, 612 (7th Cir.1984), certiorari denied, 470 U.S. 1003. Defendant suggests obliquely that the juror actually feared harm from spectators in the courtroom who were apparently either related to or friends of Frye, and that she must have translated this fear of Frye's comrades into fear and disdain of Frye himself. But there is absolutely no evidence that the juror was expressing anything other than a rational fear to walk alone in the darkness in downtown Indianapolis. There is not enough information to conclude that the juror was biased against Frye and certainly nothing said by the bailiff tainted the jury or suggested to the juror that the government agent agreed she had something to fear from Frye or his friends. Compare United States ex rel. Tobe v. Bensinger, 492 F.2d 232, 238 (7th Cir.1974). Moreover, the trial court had already given a curative instruction that would remove any possible disadvantage to the defendant from this brief encounter.[1]
 
 
 12
 Judgment affirmed.
 
 
 
 [1]
 The instruction read in part as follows:
 You are to disregard any evidence to which I sustained an objection or which I ordered stricken. Anything you may have seen or heard about this case outside the courtroom is not evidence and must be entirely disregarded. You should not be influenced by sympathy, prejudice, fear, or public opinion.