

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-14-2004

# Hardcastle v. Horn

Precedential or Non-Precedential: Precedential

Docket No. 01-9006

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Hardcastle v. Horn" (2004). *2004 Decisions.* Paper 661.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/661

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL
# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

No: 01-9006

_____

DONALD HARDCASTLE

v.

MARTIN HORN, COMMISSIONER, PENNSYLVANIA DEPARTMENT OF CORRECTIONS; GEORGE R. WHITE, SUPERINTENDENT OF THE STATE CORRECTIONAL INSTITUTION AT PITTSBURGH; AND JOSEPH P. MAZURKIEWICZ, SUPERINTENDENT OF THE STATE CORRECTIONAL INSTITUTION AT ROCKVIEW,

Appellants

_____

_____

Appeal from the United States District Court for the Eastern District of Pennsylvania (D.C. Civil No. 98-cv-03028) District Judge: Honorable John R. Padova

Argued on May 20, 2003

Before: SCIRICA, Chief Judge, NYGAARD and ROTH, Circuit Judges

(Filed May 14, 2004)

Thomas W. Dolgenos (Argued)
Office of the District Attorney
1421 Arch Street
Philadelphia, PA 19102

Attorney for Appellants

Robert B. Dunham (Argued)
Defender Association of Philadelphia
Federal Capital Habeas Corpus Unit
The Curtis Center, Suite 545 West
Independence Square West
Philadelphia, PA 19106

Attorney for Appellee

_____

OPINION

_____

ROTH, Circuit Judge:

In 1982, Donald Hardcastle was charged by the Philadelphia District Attorney's Office with murder, arson, and burglary. He was tried before a jury in the Court of Common Pleas, convicted on all counts, and sentenced to death. In both his direct appeal and state collateral review proceedings, Hardcastle asserted, inter alia, that the assistant district attorney who conducted the jury selection at his trial exercised her peremptory strikes in a racially discriminatory manner, thus violating the constitutional principle recognized by the Supreme Court in

Batson v. Kentucky, 476 U.S. 79 (1986), and made applicable to Hardcastle's then-pending direct appeal by Griffith v. Kentucky, 479 U.S. 314 (1987). The Pennsylvania Supreme Court twice rejected Hardcastle's Batson claim and affirmed his conviction.

Hardcastle then filed a petition for a writ of habeas corpus with the U.S. District Court. The District Court concluded that the Pennsylvania Supreme Court's ruling was both contrary to and an unreasonable application of Batson, granted Hardcastle's petition, and ordered a new trial. For the reasons set forth below, we hold that the Pennsylvania Supreme Court's rejection of Hardcastle's claim on the record before it was indeed an objectively unreasonable application of Batson. However, because the Commonwealth of Pennsylvania had requested, and been denied, a chance to present evidence in support of its peremptory strikes of African-Americans from the venire, it is entitled to a hearing to present that evidence. We will, therefore, remand this matter to the District Court to hold such a hearing and to then reexamine the application of Batson to Hardcastle's claim.

## I. Factual Background and Procedural History

The following material facts are drawn from the opinions issued in this case by the Pennsylvania Supreme Court and the United States District Court for the Eastern District of Pennsylvania. See Commonwealth v. Hardcastle, 546 A.2d 1101 (Pa. 1988) (direct appeal proceedings) (Hardcastle I); Commonwealth v. Hardcastle, 701 A.2d 541 (Pa. 1998) (appeal of post-conviction relief proceedings) (Hardcastle II); Hardcastle v. Horn, No. 98-CV-3028, 2001 WL 722781 (E.D. Pa. June 27, 2001) (federal habeas corpus proceedings) (Hardcastle III). They are not in dispute.

On May 23, 1982, the bodies of Joseph Gregg and Ernestine Dennis were found in Gregg's Philadelphia home. Both had received in excess of thirty stab wounds and Gregg's home had been set on fire. Several neighbors indicated that they had seen Hardcastle near Gregg's home around the time of the murders. An arrest warrant was issued and Hardcastle surrendered to the police on May 25. He was subsequently charged with burglary, two counts of arson, and two counts of murder.

Hardcastle is an African-American. During the course of jury selection at his trial, the prosecutor used her peremptory strikes, of which she had a total of twenty, to remove twelve of the fourteen African-American members of the venire. The jury ultimately empaneled to hear the case contained only one African-American. Hardcastle's trial counsel did not object to the Commonwealth's peremptory challenges during the five-day voir dire, and the trial court therefore did not require the prosecutor to state the bases for her strikes on the record. However, following voir dire, Hardcastle's counsel moved for a mistrial on the grounds that the prosecutor's use of the peremptory

2

challenges violated both the state and federal constitutions. Applying the then-governing standard articulated in <u>Swain v. Alabama</u>, 380 U.S. 202 (1965), the trial court denied this motion. The trial court similarly denied the prosecutor's request for permission to state her reasons for the challenged strikes on the record.[1]

---

[1]The following exchange occurred in connection with the trial court's denial of Hardcastle's motion for a mistrial following <u>voir dire</u>:

> The Court:[Defense Counsel], I'm not going to argue the point. There's no need to. I'm going to deny your motion. Your record is correct, and we now proceed. Is there any other motion?
>
> [Prosecutor]:May I put something on the record with regard to this issue?
>
> The Court:No.
>
> [Prosecutor]:Not in defense.
>
> The Court:No.
>
> [Prosecutor]:Okay.
>
> The Court:Now that gets rid of the problem.

After trial, Hardcastle was convicted of two counts of first degree murder, two counts of arson, and one count of burglary. Post-trial motions were filed, arguing, <u>inter alia</u>, that the prosecutor exercised her peremptory strikes in a discriminatory manner, thus violating Hardcastle's constitutional rights. A three-judge <u>en banc</u> panel of the Court of Common Pleas was convened to hear the post-trial motions. At this hearing, counsel for Hardcastle repeatedly requested an evidentiary hearing on the discriminatory strikes. In reply, the Assistant District Attorney stated that, in view of the fact that the trial had occurred six months earlier, she could not offer reasons for her strikes of black jurors and that it was no longer possible to reconstruct the voir dire. An evidentiary hearing was not granted but the panel, by a two to one vote, granted Hardcastle a new trial on the jury selection issue.

On appeal, the Pennsylvania Superior Court reversed the grant of a new trial and affirmed the conviction, holding that Hardcastle failed to make the showing required by the then-governing standard established in <u>Swain</u>. The Pennsylvania Supreme Court initially granted allocatur but then dismissed the appeal as improvidently granted. On remand, Hardcastle was sentenced to death for the murders of Gregg and Dennis, to 2 ½ to 5 years for arson, and to 2 ½ to 5 years for burglary.

Following sentencing, Hardcastle again appealed to the Pennsylvania Supreme Court. By the time his case was heard by that court in November 1987, the United States Supreme Court had issued its decision in Batson, thereby lessening the evidentiary burden imposed on defendants in Hardcastle's position. As noted by the Pennsylvania Supreme Court, this change in controlling precedent complicated its task:

> The case before us presents a difficult problem for review. Since the Supreme Court's decision in Batson post-dates appellant's judgment of sentence, the defense did not object to the prosecutor's use of peremptory challenges at the time of voir dire, the prosecution did not rebut the objection, and the trial court did not rule on the issue. Defense counsel did, however, preserve the issue by making a motion for a mistrial, subsequent to voir dire and prior to trial, based on the prosecutor's impermissible use of the challenges. Because the issue was preserved appellant is entitled to the protections granted by Batson. Therefore, we must make a post hoc evaluation of the record, examining each of the Commonwealth's fourteen peremptory challenges to determine whether appellant has made out a prima facie case of improper use.

Hardcastle I, 546 A.2d at 1104 (citation and footnote omitted).

However, rather than remanding the case to the trial court for an evidentiary hearing, the Pennsylvania Supreme Court combed through the record itself in an effort to determine whether race-neutral bases existed for the challenged strikes. After conducting this analysis, it identified the following as potential bases for the dismissal of Venirepersons 1 through 10:[2]

---

[2]For ease of reference, the first ten African-Americans struck from the venire (for whom the Pennsylvania Supreme Court proffered relatively specific race-neutral justifications) will be referred to throughout this Opinion as "Venirepersons 1 through 10." The last two African-Americans struck from the venire (for whom the Pennsylvania Supreme Court proffered only general race-neutral justifications) will be referred to as "Venirepersons 11 and 12."

Additionally, we note the discussion by the District Court and the parties regarding the fact that one of the first ten venirepersons discussed by the Pennsylvania Supreme Court may not have been an African-American, and the possibility that the Pennsylvania

(1) the first had a sister that had been raped several years before Hardcastle's trial; (2) the second admitted during voir dire that she had heard about the case through media reports; (3) the third was questioned in detail by both sides about her work in caring for delinquent children, her education, and her family history; the court noted that this extensive questioning "gave the Commonwealth attorney ample opportunity to observe responses and demeanor"; (4) the fourth had a sister and nephew who had been arrested for drug-related crimes, as well as a father who had been a victim in a separate crime; (5) the fifth "initially testified that she would not follow the judge's instructions if she felt that something else was better law," but later stated after further questioning that she would follow the judge's instructions; (6) the sixth had attended her brother's trial, in which he was convicted on robbery charges; (7) the seventh was a case-worker for the Commonwealth and had a brother who had been a victim of violent crime; (8) the eighth was a registered nurse who

had six children, one of whom , a son, had been convicted of rape; (9) the ninth was a twenty-year-old unemployed high school graduate; and (10) the tenth was a thirty-five-year-old single bartender who initially indicated that he would do whatever he thought was right, but later stated that he would follow the judge's instructions. Hardcastle I, 546 A.2d at 1104-05.

In turning next to Venirepersons 11 and 12, the court concluded these strikes were justified by more general "race-neutral" explanations, finding that "the Commonwealth had the opportunity to observe the witnesses and their response to questioning prior to exercising the peremptory challenge" and that "although the Commonwealth had ample challenges remaining, there were no challenges offered to two black jurors, one of whom ironically was challenged by the defendant." Id. at 1105. Based on the foregoing, the Pennsylvania Supreme Court concluded that Hardcastle failed to establish a prima facie case of improper use of peremptory challenges under Batson. Id. The court similarly rejected the remaining claims raised by Hardcastle on direct appeal and affirmed both his conviction and sentence.

When again presented with the Batson claim in considering Hardcastle's appeal of the denial of his Post Conviction Relief Act (PCRA) claim, see 42 Pa. C.S. § 9541 et seq., the Pennsylvania Supreme Court refused to exempt Hardcastle from the requirement that claims raised in PCRA proceedings must not have been previously litigated. The court therefore

---

Supreme Court may therefore have offered explanations for only the first nine African-Americans struck from the venire. See Hardcastle III, 2001 WL 722781 at *14-*15. We take no position with respect to this issue, as it in no way affects the outcome of this appeal. However, for ease of reference, we will assume that all of the potential jurors identified and discussed by the Pennsylvania Supreme Court were in fact African-Americans.

5

rejected his claim that intervening decisions of the United States Supreme Court required it to reach a different conclusion on collateral review than it had on direct review: "if finality means anything it must mean that our decision on the merits in this case, as to which certiorari was denied by the United States Supreme Court, cannot be affected by decisions in other cases decided three and four years later." Id.

Following exhaustion of his state remedies, Hardcastle sought a writ of habeas corpus from the United States District Court for the Eastern District of Pennsylvania. Although the petition raised unexhausted claims, both sides conceded that procedural bars prevented Hardcastle from raising his unexhausted claims in state court. Accordingly, the District Court held that Hardcastle's petition was not a mixed petition and thus was not subject to dismissal. Hardcastle III, 2001 WL 722781 at *3. Following a thorough analysis of the merits, the District Court further held that the Pennsylvania Supreme Court's resolution of Hardcastle's claim was both contrary to and an unreasonable application of Batson. It therefore granted the writ and, after concluding that an evidentiary hearing would not be helpful, ordered a new trial. Id. at *19. This appeal followed.

## II. Jurisdiction

The District Court exercised jurisdiction over Hardcastle's petition for a writ of habeas corpus pursuant to 28 U.S.C. §§ 2241 and 2254. We have jurisdiction to review the District Court's final order granting Hardcastle's petition pursuant to 28 U.S.C. §§ 1291 and 2253. The Commonwealth is not required to obtain a certificate of appealability prior to seeking review of a District Court's decision to grant a petition for a writ of habeas corpus. Cristin v. Brennan, 281 F.3d 404, 409 (3d Cir. 2002) (citing Fed. R. App. P. 22(b)(3)).

## III. Standard of Review

Because the District Court "d[id] not hold an evidentiary hearing and engage in independent fact-finding, but rather limit[ed] the habeas evidence to that found in the state court record," our review of its final judgment is plenary. Scarbrough v. Johnson, 300 F.3d 302, 305 (3d Cir. 2002).

Hardcastle's petition for a writ of habeas corpus was filed after April 1996 and thus is subject to the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2241 et seq. (AEDPA). Gattis v. Snyder, 278 F.3d 222, 228 (3d Cir. 2002). "Under AEDPA, when a federal court reviews a state court's ruling on federal law, or its application of federal law to a particular set of facts, the state court's decision must stand unless it is 'contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Lam v. Kelchner, 304 F.3d 256, 263 (3d Cir. 2002) (quoting 28 U.S.C. § 2254(d)(1)). "When a federal court reviews a state court's findings of fact, its decision must stand unless 'it was based on an unreasonable determination of

the facts in light of the evidence presented in a State court proceeding.'" Id. (quoting 28 U.S.C. § 2254(d)(2)).

It is by now well-settled that Batson claims constitute mixed questions of law and fact for purposes of federal habeas corpus review. See Riley v. Taylor, 277 F.3d 261, 277-78 (3d Cir. 2001) (en banc). The governing standard for such determinations is provided by the Supreme Court's decision in Williams v. Taylor, 529 U.S. 362 (2000). Under Williams, "a state court decision is 'contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Court] and nevertheless arrives at a result different from [its] precedent.'" Lockyer v. Andrade, — U.S. —, 123 S. Ct. 1166, 1173 (2003) (quoting Williams, 529 U.S. at 405-06).

State court determinations of mixed questions of law and fact constitute an "unreasonable application" of clearly established federal law when "'the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Id. at 1174 (quoting Williams, 529 U.S. at 413). Under the "unreasonable application" clause, "[t]he state court's application of clearly established law must be objectively unreasonable"; a decision that is merely "incorrect or erroneous" is insufficient to justify relief. Id. As the

Supreme Court recently clarified, "objectively unreasonable" is not synonymous with "clear error," as "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Id. at 1175.

Thus, "[i]t is not enough that a federal habeas court, in its 'independent review of the legal question' is left with a 'firm conviction' that the state court was 'erroneous.'" Id. (citation omitted). "Rather, that application must be objectively unreasonable." Id. Stated a different way, a "'federal habeas court should not grant the petition unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.'" Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000) (quoting Mateo, 171 F.3d at 890).

## IV. Discussion

We begin by noting our agreement with the Pennsylvania Supreme Court's observation that the retroactive application of Batson causes unique evidentiary problems for reviewing courts, as the three-step Batson inquiry with which we are all now familiar did not occur during voir dire in these cases. Thus, we are aware of the difficulties faced by both the Pennsylvania Supreme Court and the District Court in reviewing the record in this case.

Nevertheless, we cannot conclude, even under the deferential standard of

review contained in AEDPA, that the Pennsylvania Supreme Court's resolution of Hardcastle's claim amounted to an objectively reasonable application of <u>Batson</u>. Specifically, even accepting the Pennsylvania Supreme Court's proffered justifications for the challenged strikes at face value, the court still (1) failed to identify adequate bases for the striking of Venirepersons 11 and 12, and thus should have terminated its analysis and found the existence of a <u>Batson</u> violation at step two of the inquiry; and (2) failed to conduct a full and complete step three analysis with respect to the challenged strikes of Venirepersons 1-10.

However, exercising plenary review over the final judgment of the District Court, we similarly reject its decision to grant habeas corpus relief on the basis of the current evidentiary record. Instead, based on the facts of this case, in which the Commonwealth offered to state the bases for its strikes immediately following <u>voir dire</u> and in which both sides have, at various times, sought a hearing, we conclude that the District Court erred in granting habeas corpus relief without first providing the Commonwealth with the opportunity to present evidence in defense of the challenged peremptory strikes. The Commonwealth's prior observations of the difficulties it will have in recalling the reasons for its peremptory strikes should not now preclude it from making that effort when it has requested the opportunity to do so. Remand is therefore appropriate.

### A. *Background*

The Supreme Court's decision in <u>Batson</u> has been interpreted as establishing a three-step inquiry for determining the constitutionality of challenged peremptory strikes. <u>See</u> <u>Riley</u>, 277 F.3d at 275.[3] First, "'a defendant may establish a <u>prima facie</u> case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." <u>Id.</u> (quoting <u>Batson</u>, 476 U.S. at 96). "Once the defendant makes a <u>prima facie</u> showing of racial discrimination (step one), the prosecution must articulate a race-neutral explanation for its use of peremptory challenges (step two). If it does so, the trial court must determine whether the defendant has established purposeful discrimination (step three)." <u>Id.</u> Throughout this process, "[t]he ultimate burden of persuasion regarding racial motivation rests with, and does not shift from, the defendant." <u>Id.</u>

_____

[3]As a preliminary matter, we note that, although § 2254 permits habeas corpus relief only in situations in which a state court's decision "is contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," our analysis of Supreme Court precedent may be amplified by decisions of inferior federal courts evaluating reasonableness under that Supreme Court precedent. <u>See</u> <u>Matteo v. Superintendent, SCI Albion,</u> 171 F.3d 877, 890 (3d Cir. 1999) (<u>en banc</u>).

Significantly, "[d]eference in a <u>Batson</u> case must be viewed in the context of the requirement that the state courts engage in the three-step <u>Batson</u> inquiry" described above. <u>Id.</u> at 286.

In reviewing this matter, we begin by noting the incomplete nature of the Pennsylvania Supreme Court's analysis of Hardcastle's <u>Batson</u> claim on direct appeal. Simply stated, the court conflated steps one and two of the <u>Batson</u> analysis in the sense that it identified and then analyzed potential justifications for the challenged strikes — something that should not occur until step two — in its step one analysis of whether Hardcastle had successfully established a <u>prima facie</u> case. The court then proceeded to step three, only to conclude that Hardcastle had failed to establish a <u>prima facie</u> case of discrimination, thus indicating that, technically speaking, its analysis never proceeded beyond step one.

The Pennsylvania Supreme Court apparently recognized this error when, in its subsequent decision regarding Hardcastle's appeal of the PCRA court's decision, it acknowledged as follows:

> Notwithstanding the language in our opinion [on direct appeal] to the effect that [Hardcastle] had not made out a prima facie case, the extensive analysis of the record for race-neutral reasons indicates that our post hoc analysis actually presumed the existence of a prima facie case, evaluated the evidence and all the relevant circumstances as the trial court would ordinarily do pursuant to Batson, and resolved the ultimate issue by deciding that the Commonwealth had not used its peremptory challenges improperly.

<u>Hardcastle II</u>, 701 A.2d at 548. In view of this ruling, we will follow the lead of the District Court in examining the Pennsylvania Supreme Court's decision on direct review, <u>see</u> <u>Hardcastle I</u>, as modified by its opinion on collateral review, <u>see</u> <u>Hardcastle II</u>. Stated alternatively, we will treat <u>Hardcastle I</u> as representing the Pennsylvania Supreme Court's full three-step analysis of Hardcastle's <u>Batson</u> claim.

We further note that we will read the Pennsylvania Supreme Court's acknowledgment in <u>Hardcastle II</u> of the existence of a <u>prima facie</u> case in <u>Hardcastle I</u> as a concession that Hardcastle had satisfied his burden at step one. In view of the fact that twelve of the prosecutor's peremptory strikes were exercised against African-American members of the venire, we have no doubt that this concession was appropriate. <u>See</u> <u>Rico v. Leftridge-Byrd</u>, 340 F.3d 178, 185 (3d Cir. 2003) (noting that "[o]ne way to establish a <u>prima facie</u> case at step one is to show a pattern of peremptory challenges of jurors of a particular race") (citing

9

Batson, 476 U.S. at 96-97). Even in the absence of such a concession, however, the Pennsylvania Supreme Court's decision to proceed to steps two and three moots the issue of whether Hardcastle made a sufficient showing at step one. See Hernandez v. New York, 500 U.S. 352, 359 (1991) (holding that "[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot."). Thus, we will focus our discussion on steps two and three.

## B. Step Two

As detailed in the District Court's opinion and summarized above, the Pennsylvania Supreme Court, in considering Hardcastle's direct appeal, examined the record in an effort to identify race-neutral bases for the twelve challenged strikes. It articulated what it considered to be specific and facially credible bases for the striking of Venirepersons 1 through 10. However, it was unable to do so with respect to Venirepersons 11 and 12 and therefore offered only the following general justifications for these strikes: (1) "the Commonwealth had the opportunity to observe the witnesses and their response to questioning prior to exercising the peremptory challenge"; and (2) "although the Commonwealth had ample challenges remaining, there were no challenges offered to two black jurors, one of whom ironically was challenged by the

defendant." Hardcastle I, 546 A.2d at 1105.[4]

---

[4]We note the existence of some uncertainty in the case law with respect to who may properly articulate the Commonwealth's justifications at this stage of the analysis. Here, this uncertainty raises the question whether, and to what extent, we may consider the race-neutral explanations offered by the Pennsylvania Supreme Court on behalf of the prosecutor. Some cases may be read to imply that, because the prosecutor's subjective intent is the principal focus of a Batson challenge, he or she must personally articulate the race-neutral basis required at step two. See, e.g., Riley, 277 F.3d at 282 (holding that "[t]he inquiry required by Batson must be focused on the distinctions actually offered by the State in the state court, not on all possible distinctions we can hypothesize. Apparent or potential reasons do not shed any light on the prosecutor's intent or state of mind when making the peremptory challenge") (citations omitted). We have previously determined, however, that "[w]e are unprepared to hold . . . that the state's burden can never be carried without direct evidence from the decisionmaking prosecutor regarding his or her state of mind." See Johnson v. Love, 40 F.3d 658, 667 (3d Cir. 1994); Pemberthy v. Beyer, 19 F.3d 857, 864-65 (3d Cir. 1994) (concluding that state appellate court properly made factual findings regarding Batson inquiry despite the fact

10

In addressing the question whether the justifications identified by the Pennsylvania Supreme Court for the striking of Venirepersons 11 and 12 are sufficient to satisfy the Commonwealth's burden of production, we note that the Supreme Court has purposely set a

_____

that there was no state court hearing, and that the prosecutor, at that time, had not advanced anything more than a general explanation for the challenged strikes); Jones v. Ryan, 987 F.2d 960, 965-66 & n.2 (3d Cir. 1993) (suggesting that state appellate courts may make factual findings in their review of Batson claims); Esquivel v. McCotter, 791 F.2d 350, 351 (5th Cir. 1986) (affirming state appellate court's factual determination regarding Batson claim raised for first time on appeal).

However, even assuming arguendo that it was appropriate in this case for the Pennsylvania Supreme Court to sift through the trial record in an effort to identify unstated race-neutral bases for challenged peremptory strikes, the court failed to either (1) identify a satisfactory step two explanation for the striking of Venirepersons 11 and 12, or (2) conduct an adequate step three analysis as to any of the African-Americans struck from the venire. Thus, even accepting the Pennsylvania Supreme Court's proffered justifications as facially valid, we are still unable to conclude that its resolution of the matter is an objectively reasonable application of Batson.

relatively low bar at step two. It therefore is rare for a case to be decided at this stage of the analysis. Indeed, "[t]he second step of [the Batson analysis] does not demand an explanation that is persuasive, or even plausible." Purkett v. Elem, 514 U.S. 765, 767-68 (1995) (per curiam). Rather, the sole issue at step two "is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." Id. at 768.

Further, the Supreme Court has emphasized the necessity of maintaining the analytical distinction between steps two and three, as step two merely places upon the prosecutor the burden of producing an explanation; "[i]t is not until the third step that the persuasiveness of the justification becomes relevant – the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination." Id. At step three,

> implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination. But to say that a trial judge may choose to disbelieve a silly or superstitious reason at step three is quite different from saying that a trial judge must terminate the inquiry at step two when the race-neutral reason is silly or superstitious. The latter

11

violates the principle that the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.

The reasons presented at step two, however, must be "reasons," not merely a denial of discriminatory motive or an affirmation of good faith. See Id. at 768-69. "What [Batson] means by a 'legitimate reason' is not a reason that makes sense, but a reason that does not deny equal protection." Id.

Under this standard, we need not conduct at step two an analysis of the purportedly race-neutral explanations proffered by the Pennsylvania Supreme Court with respect to Venirepersons 1 through 10. However, the justifications for the striking of Venirepersons 11 and 12 fail to satisfy even the minimal burden of production required at step two. The Pennsylvania Supreme Court's assertion that the striking of Venirepersons 11 and 12 was race-neutral simply because the prosecutor had an opportunity to observe them during voir dire is inadequate on its face. Indeed, "[t]he record contains no evidence whatsoever about any juror's demeanor or the prosecutor's observations or impressions thereof." Hardcastle III, 2001 WL 722781 at *13. Thus, this explanation amounts to nothing more than a statement that the prosecutor acted on

intuition and with the absence of discriminatory intent. We have repeatedly rejected such vague and general claims in the past. See United States v. Casper, 956 F.2d 416, 418 (3d Cir. 1992) (holding that, because "[t]he Batson Court stated that explanations must be 'clear and reasonably specific,'" "[e]xplanations based on a prosecutor's mere 'good faith' or 'intuition' do not suffice.") (citations omitted); United States v. Clemons, 843 F.2d 741, 745 (3d Cir. 1988) (noting that, "[a]lthough the reason need not approach the level justifying a challenge for cause, the [Batson] Court emphasized that the prosecutor must assert a clear, specific reason beyond 'his intuitive judgment' or 'his good faith.'") (quoting Batson, 476 U.S. at 98 & n.20).

We reject them again here. Indeed, to say, as the Pennsylvania Supreme Court did, that a prosecutor's step two burden may be satisfied based solely upon her opportunity to observe the jurors during voir dire creates an exception which threatens to swallow the rule. As Hardcastle correctly argues, the same could be said regarding almost any peremptory strike, and the acceptance of the explanation proffered by the Pennsylvania Supreme Court for the striking of Venirepersons 11 and 12 would render step two meaningless, as any prosecutor could bypass it by briefly questioning and observing the prospective juror prior to exercising the strike.

Second, the fact that the prosecutor had enough peremptory strikes to remove the two remaining African-American

12

venirepersons, but chose not to do so, cannot demonstrate the absence of discriminatory intent in the striking of the other twelve African-Americans from the venire. See Jones v. Ryan, 987 F.2d 960, 972-73 (3d Cir. 1993) (rejecting a similar argument and noting that "[w]e doubt the significance of including a single black on the panel if, at the same time, the government used most of its peremptory challenges to strike blacks with backgrounds similar to the white jurors ultimately selected.") (quoting Clemons, 843 F.2d at 747); see also Clemons, 843 F.2d at 747 (holding that the striking of "a single black juror could constitute a prima facie case even when blacks ultimately sit on the panel and even when valid reasons exist for striking other blacks."). Thus, absent further justification for the striking of Venirepersons 11 and 12, we cannot conclude that the Pennsylvania Supreme Court's decision to proceed to step three in justifying the strikes of Venirepersons 11 and 12 was an objectively reasonable application of Batson.

## C. Step Three

We further hold that the failure of the Pennsylvania Supreme Court to conduct an adequate analysis at step three with respect to the challenged strikes of Venirepersons 1-10 also precludes a finding that its application of Batson was objectively reasonable. Step three requires a court conducting a Batson inquiry to "address[] and evaluate[] all evidence introduced by each side (including all evidence introduced in the first and second steps) that tends to show that race was or

was not the real reason and determine[] whether the defendant has met his burden of persuasion." Riley, 277 F.3d at 286 (citation and internal quotations omitted). In Riley, we placed particular emphasis on the state courts' failure to consider all of the evidence before them in determining whether the justifications offered by the prosecutor were pretextual:

> The state courts in this case rejected Riley's Batson claim without discussing any of the ample evidence that throws into question the explanations offered by the prosecutor for striking two of the black jurors and there is nothing relevant in the record that might otherwise support the state courts' decisions. Thus, we do not know why the state courts found the State's explanation was plausible and credible in light of the other evidence. *It is because of the state courts' omission of a requirement under the third step of the* <u>*Batson*</u> *inquiry – of an ultimate determination on the issue of discriminatory intent based on <u>all</u> the facts and circumstances – that the State's argument founders.*

Id. at 287 (italicized emphasis added).

After close analysis of the record,

we reach the same conclusion here. In so doing, we note that "a judge considering a <u>Batson</u> challenge is not required to comment explicitly on every piece of evidence in the record." <u>Id.</u> at 290. However, "some engagement with the evidence considered is necessary as part of step three of the <u>Batson</u> inquiry," and this requires "something more than a terse, abrupt comment that the prosecutor has satisfied <u>Batson</u>." <u>Id.</u> at 290-91 (citations and internal quotations omitted).

Here, "[t]he Pennsylvania Supreme Court's decision does not indicate that the court engaged in any analysis or consideration of the credibility of the potential justifications that it had proffered. Rather, the court's decision reads as if the court accepted the justifications at face value." <u>Hardcastle III</u>, 2001 WL 722781 at *12. Accordingly, as in both <u>Jones</u> and <u>Riley</u>, we lack an adequate step three analysis to which we may defer. The Commonwealth should be given the opportunity it requests to demonstrate that its exercise of peremptory strikes was justified under the <u>Batson</u> third step. In addition, Hardcastle should be afforded the opportunity to show any weaknesses he may find with the justifications for the strikes.

### D. Remedy

Thus, in view of the state of the evidentiary record, we reject Hardcastle's argument in favor of affirmance.[5]

_____

[5]We note that the District Court's conclusion that Hardcastle is entitled to a

Although we agree with the District Court's statement that it will be difficult at this late date to reconstruct the bases for the challenged strikes, we cannot agree with its conclusion that, under the facts of this case, the Commonwealth is not entitled to attempt to do so or that the state of the evidentiary record will not be improved as a result thereof. In so holding, we are persuaded by the fact that, despite the prosecutor's offer to state the bases for her peremptory strikes on the record immediately following <u>voir dire</u> and her subsequent request for some form of hearing, the Commonwealth has never been provided with either a state or federal forum in which to present evidence in defense of its actions in this case.

We further note that neither the prosecutor's concession during oral

_____

new trial was cited with approval by this Court in <u>Riley</u>, 277 F.3d at 294 & n.14 (citing <u>Hardcastle III</u>, 2001 WL 722781 at *19). Indeed, at oral argument before us, counsel for Hardcastle cited the <u>Riley</u> Court's approving reference to the granting of a new trial in <u>Hardcastle III</u> as reason to affirm the grant of his writ rather than to remand for a <u>Batson</u> hearing. However, it goes without saying that the merits of this case were not before us in <u>Riley</u>. Having now had the benefit of the parties' arguments with respect to this issue, we conclude that the District Court should not have granted relief without first holding an evidentiary hearing.

argument before the <u>en banc</u> Court of Common Pleas that she could not recall the precise bases for the challenged strikes nor the passage of time mandates a contrary result. As we have previously held:

> [t]here will undoubtedly be post-conviction relief proceedings in which the state, by reason of death, absence, or faded memory, will be unable to produce a prosecutor with a specific recollection of the reason for a challenge alleged to violate <u>Batson</u>. Courts frequently are required to draw inferences from circumstantial evidence regarding a decision-maker's state of mind, however, and we are unwilling to rule out the possibility that the state may be able to satisfy its step two <u>Batson</u> burden by tendering circumstantial evidence.

<u>Johnson</u>, 40 F.3d at 667. Indeed, we have expressly rejected the notion that our prior precedent mandates relief in situations in which the prosecutor concedes that he or she cannot remember the bases for a challenged strike:

> [<u>Harrison v. Ryan</u>, 909 F.2d 84 (3d Cir. 1990),] is distinguishable . . . because the prosecutor in that case offered no explanation for excluding one of the six black venirepersons he had struck from the jury, but simply asserted at a hearing before a federal magistrate that he could not recall his reasons. It was based on the prosecutor's assertion that he did not know the reason he struck a black venireperson, coupled with the absence of any other explanation, that this court affirmed the order for a new trial. *We do not read <u>Harrison</u> to suggest that a state cannot be permitted to reconstruct the prosecutor's rationale for excluding a juror during a later <u>Batson</u> hearing when the prosecutor admits to having no recollection of his motivations at the time.*

<u>Johnson</u>, 40 F.3d at 667 n.4 (emphasis added). Our conclusion that such difficulties in reconstructing <u>voir dire</u> do not foreclose an evidentiary hearing is further supported by the Supreme Court's resolution of similar situations. See <u>Miller-El v. Cockrell</u>, — U.S. —, 123 S. Ct. 1029, 1042-43 (2003) (noting that evidence presented at a <u>Batson</u> hearing two years after <u>voir dire</u> "was subject to the usual risks of imprecision and distortion from the passage of time," but nevertheless concluding that the Court of

15

Appeals erred in refusing to grant a certificate of appealability); Batson, 476 U.S. at 133 n.12 (remanding for a hearing despite the petitioner's concession that it would be all but impossible to reconstruct the prosecutor's rationale for the challenged strikes) (Burger, C.J., dissenting).

Thus, while the retroactive application of the Supreme Court's ruling in Batson undeniably causes many problems, we do not believe the weight of this burden should be borne solely by the Commonwealth. It is difficult in the context of a pre-Batson trial to fault Hardcastle's counsel for failing to request an evidentiary hearing following voir dire. It is equally unfair to require the Commonwealth to retry Hardcastle without first being provided with the opportunity to defend its conduct in the prior trial. Given the Batson Court's emphasis on the subjective intent of the prosecutor, we find it difficult to imagine a situation in which it would be appropriate to take the extraordinary step of granting habeas corpus relief without first providing the state with a hearing at which it could offer evidence in support of the challenged strikes if, as in this case, it desires to do so.

Finally, having concluded that further proceedings are required, we must address the parties' arguments as to the appropriate forum. Although both sides request a hearing as an alternative remedy, Hardcastle seeks to have the matter handled by the District Court while the Commonwealth asserts that the state courts

must be given the first opportunity to rule on the new evidence submitted.

As we have previously held, "[w]e do not have authority under the federal habeas statutes, 28 U.S.C. § 2241 or § 2254, to remand a habeas corpus petition to a state court for an evidentiary hearing." Keller v. Petsock, 853 F.2d 1122, 1129 (3d Cir. 1988). Federal district courts, by contrast, may conduct such hearings. See id.[6] Moreover, even if we were able to remand directly to the state court, neither this Court nor the Supreme Court has held "that the state courts should, after having foregone the opportunity to hold an evidentiary hearing and resolve the issue, be given another opportunity to do so." Id. Therefore, to the extent that the Commonwealth asserts in its post-argument submission that we should grant the writ conditioned upon a hearing in state court, we reject this argument for the same reasons we declined to do so in Keller: "Such a remedy would . . .

_____

[6]We note that AEDPA "amended the federal habeas statute in such a way as to limit the availability of new evidentiary hearings on habeas review." Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000) (citing 28 U.S.C. § 2254(e)(2)). However, even post-AEDPA, evidentiary hearings are permitted where, as here, the "state courts fail[] to resolve the factual issue on which [the petitioner's] habeas petition rests." Id. In such cases "the failure to develop the factual record would not be [the petitioner's] fault." Id. at 286-87.

contravene the policy underlying the exhaustion requirement. State courts are certainly entitled to have the first opportunity to review federal constitutional challenges to state convictions. There is no requirement, however, that they be given more than one opportunity to adjudicate these claims." Id. at 1130 (citation omitted). Here, as in Keller, Hardcastle "has given the state courts their first opportunity, and they did not seize it. Therefore the federal district court must become the trier of fact." Id. (footnote omitted). Thus, we will remand this matter to the District Court for further development of the evidentiary record with respect to Hardcastle's Batson claim, and, if this claim ultimately fails, for consideration of the remaining issues presented in his habeas petition.

## V. Conclusion

For the foregoing reasons, we will vacate the final judgment of the District Court and remand the matter for further proceedings consistent with this opinion.

Nygaard, J., dissenting.

I agree with most of the analysis and conclusions reached by the majority in its well-crafted and thorough opinion. I disagree, however, with the remedy. The Commonwealth (Appellant) argued before us that "the Pennsylvania court should be allowed to conduct a Batson hearing **if any is deemed necessary**." (emphasis added). I conclude that a hearing is not only unnecessary, but is unwarranted.

In its opinion, the District Court concluded that:

> The proper relief in this case is a new trial with the opportunity to retry the petitioner before a properly selected jury. A new trial is especially appropriate where, as here, the passage of time makes a new evidentiary hearing on the petition impossible. Nearly twenty years have passed since Petitioner's trial, such a length of time that even Respondents [the Commonwealth] admit[s] that an evidentiary hearing on Petitioner's Batson claim is unlikely to be helpful.[7]

---

[7]Also shortly after the trial and conviction, and on appeal to the three-judge Common Pleas panel, the prosecutor explained that she was unable to recall why she struck the African-American juror:

17

I find that the District Court's reasons and reasoning are compelling and supported by the record. Hence, and essentially for the reasons given by the District Court, I respectfully dissent.

The Appellant argues that we should remand for a *Batson* hearing. I believe, however, that the Appellant is judicially estopped from presenting its "actual reasons," given the district attorney's admission during the direct appeal that she could not remember her reasons, nor could she reconstruct the record. Our opinion in *Johnson v. Love*, 40 F.3d 658 (3d Cir. 1994), raises an interesting option for remand in certain cases for a hearing, allowing the state to attempt to meet its burden through circumstantial evidence of the prosecutor's intent. I do not think that works well here. We have the entire record before us, and it is clear that the prosecutor discriminated by striking African-Americans. The record is devoid of her intent. Moreover, although the Appellant provides many reasons why any particular juror might have been struck, it has not proffered any evidence of why they were or anything that would indicate a hearing on circumstantial evidence of actual reasons or intent would be productive.

I would affirm the District Court's decision to issue the writ and grant Petitioner Hardcastle a new trial.

---

> How can I possibly now tell you why I challenged anybody? I don't think that now, some six months after, I can tell you why I challenged somebody then. I don't know how we can possibly have a hearing as to why I challenged a particular juror six months later.

Similarly, the prosecutor argued that it was impossible for her to reconstruct the record at that stage.