

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-28-2006

# USA v. Rodriguez

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2466

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Rodriguez" (2006). *2006 Decisions*. Paper 1201.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1201

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-2466

———

UNITED STATES OF AMERICA

v.

RACHELANN RODRIGUEZ,

<u>Appellant</u>

———

On Appeal from the United States District Court
for the District of Delaware
(D.C. Criminal No. 04-cr-00071)
District Judge: Honorable Kent A. Jordan

———

Argued: March 29, 2006

Before: McKEE, BARRY, and VAN ANTWERPEN, <u>Circuit</u> <u>Judges</u>

(Filed April 28, 2006 )

Christopher S. Koyste
Jonathan Pignoli (Argued)
Federal Public Defender
704 King Street, Suite 110
Wilmington, DE 19801
        *Counsel for Appellant*

Colm F. Connolly
Christopher J. Burke (Argued)
United States Attorney
1007 North Orange Street
Nemours Building, Suite 700
P.O. Box 2046
Wilmington, DE 19899-2046
          *Counsel for Appellee*


_____

OPINION OF THE COURT

_____


VAN ANTWERPEN, <u>Circuit</u> <u>Judge</u>.

Rachelann Rodriguez was convicted by a jury in the District of Delaware of three counts of making false statements in connection with the purchase of firearms and one count of conspiracy to commit these crimes. She was sentenced to 24 months imprisonment and 36 months of supervised release. One of the special conditions of her supervised release prohibited her from having direct or indirect contact with her husband during her release without the prior approval of the United States Probation Office.

Rodriguez now appeals from the District Court's Order of Judgment and Conviction. First, she claims the government violated her equal protection rights, under <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986), by using peremptory challenges to exclude African-American venirepersons from the jury panel. Second, she argues the special condition of her supervised release was (1) an impermissible delegation of judicial authority to a non-judicial officer; (2) void for vagueness; and (3) impermissibly

2

burdened her fundamental right to maintain familial integrity. We have jurisdiction pursuant to 28 U.S.C. § 1291 and will affirm.

## I.

Because we write solely for the parties, we set forth only those facts necessary to our analysis. A grand jury in the District of Delaware issued an indictment against Rodriguez on June 22, 2004. A superseding indictment issued on July 27, 2004. The superseding indictment charged Rodriguez with four counts of making false statements to a federally-licensed firearms dealer with the intent to deceive him with respect to a fact material to the sale of a firearm, in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2). The superseding indictment also charged her with one count of conspiring with an unindicted co-conspirator to commit these offenses. 18 U.S.C. § 371.

A jury trial was held on January 18 and 19, 2005. The District Court summoned 55 people to jury duty, 48 of whom appeared. At voir dire, the court struck 7 of these 48 jurors for cause. The court then directed counsel to exercise their peremptory challenges. After the government used 4 of its first 5 peremptory challenges to strike African-American venirepersons, defense counsel requested a sidebar and noted that of the 41 venirepersons remaining after the for-cause strikes, 9 were African-American and the government had struck 4 of these 9 individuals.

The court then asked the government to explain its strikes. The government stated that it struck Juror No. 4 because, "[h]e is the gentleman who was falsely accused and

3

convicted of a crime. He happens to be African-American." App. at 114. The government stated that it struck Juror No. 33 because, "According to the agent he, quote, looks like Beetlejuice from the Howard Stern Show. I noted he is unemployed. When I looked at him, he looked like he had a low I.Q. and I struck him. He happens to be African-American." Id.

The government stated that it struck Juror No. 2 because she "is a woman who at the time, every time I tried to make eye contact with her, she looked away or smirked at me. She is a young woman. I thought perhaps she had some sort of smart-alecky attitude. She happened to be African-American. I struck her." Id. at 114-15.

The government struck Juror No. 8 because, "When I looked at him, I looked at his attire and I looked, made eye contact with him, tried to make eye contact with him. He reminded me and my agent of individuals that my agent often interviews and when he looked at me, it didn't give me a warm, fuzzy feeling and I struck him too." Id. at 115. The court then overruled defense counsel's Batson objections: "All right. Your Batsen [sic] challenge is noted for the record. It's overruled." Id.

The jury that was empaneled ultimately found Rodriguez guilty of three of the four counts of making false statements and guilty on the conspiracy charge. On April 22, 2005, the District Court sentenced Rodriguez to 24 months imprisonment and 36 months of supervised release. One of the special conditions of her supervised release was that, "[t]he defendant is to have no contact, direct or indirect, with Devon Drummond [Rodriguez's

4

husband and the father of one of her children] without the prior approval of the U.S. Probation Office."

## II.

## A.

Citing <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986), Rodriguez argues the government violated her equal protection rights because it used peremptory challenges to intentionally exclude African-American venirepersons, specifically Jurors No. 8 and 33, based on their race. We review a district court's findings regarding a <u>Batson</u> challenge for clear error. <u>Hernandez v. New York</u>, 500 U.S. 352, 364 (1991) (plurality opinion).

<u>Batson</u> created a three-step framework for judges to employ in determining whether a prosecutor has violated the Equal Protection Clause:

> "First, the defendant must make out a prima facie case 'by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose.' Second, once the defendant has made out a prima facie case, the 'burden shifts to the State to explain adequately the racial exclusion' by offering permissible race-neutral justifications for the strikes. Third, 'if a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination.'"

<u>Johnson v. California</u>, 125 S. Ct. 2410, 2416 (2005) (internal citations omitted and alteration in original).

We proceed in this case directly to the second step of the analysis.[1] At step two,

_____

[1]At the first step of the <u>Batson</u> analysis, any question regarding the existence of a prima facie showing of discrimination becomes moot where, as here, the prosecutor offers

the burden shifts to the government to explain the racial exclusion by offering race-neutral reasons for the strikes. Wilson v. Beard, 426 F.3d 653, 668 (3d Cir. 2005). "[I]f the government's explanation does not, on its face, discriminate on the basis of race, then we must find that the explanation passes Batson muster as a matter of law." United States v. Uwaezhoke, 995 F.2d 388, 392 (3d Cir. 1993). Put another way, "[w]hat [Batson] means by a 'legitimate reason' is not a reason that makes sense, but a reason that does not deny equal protection." Hardcastle v. Horn, 368 F.3d 246, 258 (3d Cir. 2004) (alteration in original and citation omitted).

> The government struck Juror No. 33 because:

> "According to the agent he, quote, looks like Beetlejuice from the Howard Stern Show. I noted he is unemployed. When I looked at him, he looked like he had a low I.Q. and I struck him. He happens to be African-American."

App. at 114. Rodriguez argues this is evidence that the prosecutor "basically stated that she struck Juror No. 33 because he resembled another black man." Br. at 41.

Because the proffered grounds for striking Juror No. 33 were race-neutral, we cannot agree with Rodriguez. First, the prosecutor's consideration of Juror No. 33's employment status was a legitimate basis for striking him. See Howard v. Moore, 131 F.3d 399, 408 (4th Cir. 1997) ("Employment status is a legitimate race-neutral factor that may be relied upon by a prosecutor for challenging a potential juror."). Second, the

_____

an explanation of the peremptory challenge before the district court expressly addresses the prima facie issue. United States v. Uwaezhoke, 995 F.2d 388, 392 (3d Cir. 1993).

prosecutor's expressed belief that Juror No. 33 was unsuitable because he appeared to have "a low I.Q.," while less than commendable and not based on the juror's verbal communications, was not on its face a racially-motivated reason for striking him.[2]  See Hardcastle, 368 F.3d at 258 (prosecutor's reason for strike need not be logical so long as it does not deny equal protection).  Finally, comparing the appearance of Juror No. 33 to that of "Beetlejuice" – a mentally- and physically-challenged individual who appears on the Howard Stern television show – was exceptionally inappropriate behavior on the part of the prosecutor, and we are relieved to see that the United States Attorney's Office now concedes as much in its brief and apologizes for the remark.  Nevertheless, the record does not establish that the motivation was based on the juror's race.  Accordingly, we are satisfied that the government met its burden under step two of the analysis for its strike of Juror No. 33.

> The government's explanation for striking Juror No. 8 was as follows:
>
> "When I looked at him, I looked at his attire and I looked, made eye contact with him, tried to make eye contact with him.  He reminded me and my agent of individuals that my agent often interviews and when he looked at me, it didn't give me a warm, fuzzy feeling and I struck him too."

App. at 115.  Citing United States v. Casper, 956 F.2d 416 (3d Cir. 1992), Rodriguez argues this was a peremptory strike based merely on the prosecutor's intuition and was

---

[2]Government counsel stated at oral argument that in the District of Delaware there is no individual voir dire of jurors.

therefore insufficient at the second stage of the <u>Batson</u> analysis.

We agree that a strike based *solely* on intuition is insufficient at the second stage of the <u>Batson</u> analysis. <u>Casper</u>, 956 F.2d at 418; <u>United States v. Chalan</u>, 812 F.2d 1302 (10th Cir. 1987) (prosecutor's explanation of "[b]ased upon his background and other things in his questionnaire, I just elected to strike him" inadequate at second step of <u>Batson</u>). Our reading of the record in this case, however, does not lead us to conclude the prosecutor struck Juror No. 8 based only on intuition. The prosecutor cited the juror's similarity to other individuals that she and her case agent had interviewed as a specific rationale supporting her concerns with Juror No. 8. Although that explanation may appear weak, at this phase of the <u>Batson</u> inquiry, the tendered explanation for striking the juror need not be persuasive, or even plausible. <u>Purkett v. Elem</u>, 514 U.S. 765, 768 (1995). We are satisfied that the proffered reason for striking Juror No. 8 suffices at this step of the <u>Batson</u> analysis. <u>See</u> <u>Casper</u>, 956 F.2d at 418 (prosecutor's perception of juror's eye contact and attitude sufficient at step two of <u>Batson</u>).

Turning to step three of the analysis, "we must ask whether the district court erred in finding that the government's facially valid explanation for the peremptory challenge was not, as a matter of fact, a mere pretext for discriminatory intention." <u>Uwaezhoke</u>, 995 F.2d at 394. "We must accept the factual determination of the district court unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive

evidentiary data." Id. The ultimate burden of persuasion "rests with, and never shifts from, the opponent of the strike." Hardcastle, 368 F.3d at 258.

Rodriguez did not meet this burden. When asked to do so by the District Court, the government offered race-neutral reasons for its strikes, which reasons Rodriguez never challenged. While the District Court could (and arguably should) have engaged in some analysis of the government's proffered reasons for its strikes before ruling, Rodriguez bore the ultimate burden of persuading the District Court that the government's proffered reasons for its strikes were pretextual. Defense counsel did not request to be heard further on the objection or ask the court for an opportunity to make any additional inquiry into the stated explanation. Accordingly, we find no clear error in the District Court's determination that the government did not strike these jurors out of discriminatory animus.

**B.**

Rodriguez next challenges the special condition of her supervised release that prohibited her from having contact with her husband absent Probation Office approval. She claims this condition was an abuse of discretion on the grounds that it (1) impermissibly delegated a judicial function to a non-judicial officer; (2) was void for vagueness; and, (3) impermissibly burdened her right to familial integrity and was a greater deprivation than was reasonably necessary to achieve the goals of her sentence. We review the District Court's imposition of special conditions of supervised release for

abuse of discretion.  United States v. Loy, 237 F.3d 251, 256 (3d Cir. 2001).

## 1.

Probation officers are vested with statutory authority to advise and supervise probationers and "to perform any other duty that the court may designate."  18 U.S.C. § 3603(10).  This authority extends to the terms of supervised release.  United States v. Pruden, 398 F.3d 241, 250 (3d Cir. 2005).  However, because the courts alone may impose punishment, "the most important limitation is that a probation officer may not decide the nature or extent of the punishment imposed upon a probationer."  Id.  Thus,

> "[i]f [the defendant] is required to participate in a mental health intervention only if directed to do so by his probation officer, then this special condition constitutes an impermissible delegation of judicial authority to the probation officer. On the other hand, if the District Court was intending nothing more than to delegate to the probation officer the details with respect to the selection and schedule of the program, such delegation was proper."

Id. (quoting United States v. Peterson, 248 F.3d 79, 85 (2d Cir. 2001)) (alteration in original).

After reviewing the record and the unique circumstances of this case, we are satisfied that the special condition was permissible.  According to Rodriguez's Presentence Report, Drummond is currently serving a prison sentence, presumably under the supervision of the Delaware Department of Corrections, and will remain incarcerated for the entire term of Rodriguez's release.  Thus, the ultimate decision to allow any visitation now rests, by necessity, with the Department of Corrections, and as counsel noted at oral argument, because both Rodriguez and Drummond are felons there is an

10

increased interest in controlling their contact. Accordingly, given the controls in place on Rodriguez's visitation rights, we are satisfied the District Court intended to delegate only the administrative details of Rodriguez's contact with Drummond to her probation officer and not delegate its judicial punishment power to approve or deny such contact.

**2.**

Rodriguez also argues the special condition is void for vagueness. Conditions of release are void for vagueness where "men of common intelligence must necessarily guess at its meaning and differ as to its application." Loy, 237 F.3d at 262. At the same time, however, we must read special conditions of supervised release in a commonsense way. United States v. Paul, 274 F.3d 155, 166 (5th Cir. 2001).

Against the factual background of this case, a commonsense reading of the special condition is that it is intended to protect Rodriguez from her husband's influence during any future contact. The record is clear that Drummond's influence on Rodriguez resulted in her commission of the charged crimes. Given that the Probation Officer may consider the effect Drummond has historically had on Rodriguez when it approves future contact, the mere fact that the condition does not specify all the details (*e.g.*, duration, location, security) of that contact does not render it impermissibly vague. See United States v. Nash, 438 F.3d 1302, 1306-07 (11th Cir. 2006) (condition stating "[a]s directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics," was

11

not impermissibly vague for failure to specify the "risks" or "third parties" because probation officer could rely on record of defendant's convictions to determine which third parties faced potential harm from defendant and would require notification of risk); see also United States v. Gallo, 20 F.3d 7, 12 (1st Cir. 1993) ("Conditions of probation do not have to be cast in letters six feet high, or to describe every possible permutation, or to spell out every last, self-evident detail.").

**3.**

Rodriguez finally argues the special condition violates her constitutional right to maintain familial integrity and is a greater deprivation of liberty than is necessary to achieve the goals of her sentence. We disagree on both counts.

While Rodriguez's relationship with Drummond is constitutionally protected, Roberts v. U.S. Jaycees, 468 U.S. 609, 617-18 (1984), those convicted of crimes lose a measure of their liberties. See Griffin v. Washington, 483 U.S. 868, 874 (1987). Thus, special conditions that restrict constitutional rights are upheld so long as they (1) are directly related to deterring the defendant and protecting the public and (2) are narrowly tailored. United States v. Crandon, 173 F.3d 122, 128 (3d Cir. 1999).

We are satisfied that the condition at issue meets these criteria. The record makes clear that Rodriguez committed the charged crimes at Drummond's behest. Limiting Rodriguez's contact with Drummond is directly related to the salutary purpose of reducing his ability to induce her to commit crimes and protecting the public from further

12

offenses.  See 18 U.S.C. § 3563(b)(6) (court may order as a special condition of supervised release that defendant "refrain from frequenting specified kinds of places or from associating unnecessarily with specified persons"); United States v. Sicher, 239 F.3d 289, 290-92 (3d Cir. 2000) (release conditions permissible even where they may impact family relationships).

We are also satisfied that the condition is appropriately limited in scope.  Contact between Rodriguez and Drummond is not wholly prohibited and is simply subject to the experienced judgment of a probation officer.  Given that Drummond's influence led directly to Rodriguez committing the charged crimes, we do not believe that allowing a probation officer to decide the appropriate circumstances of contact in light of Rodriguez's history with her husband goes too far.  See United States v. Crume, 422 F.3d 728, 734 (8th Cir. 2005) (upholding condition barring defendant possessor of child pornography from seeing own son without prior approval of probation officer); see also United States v. Myers, 426 F.3d 117, 125 (2d Cir. 2005) (noting that condition barring defendant convicted of child pornography from contact with own son without prior approval acceptable if intended to protect children).  We therefore perceive no abuse of discretion in the condition.

## III.

We have considered all other arguments made by the parties on appeal, and conclude that no further discussion is necessary.  For the foregoing reasons, we will

13

affirm Rodriguez's conviction and sentence.